**USX CORPORATION, Appellant,**

v.

**PRIME LEASING INC.**

v.

**Robert L. CLARKE, United States Comptroller of the Currency, The Federal Deposit Insurance Corporation, The Deposit Insurance Bridge Bank, N.A. and Bank One, Texas, N.A.**

No. 92-3414.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1993.

Decided March 5, 1993.

---

Eric A. Schaffer (argued), Sean M. Coleman, Reed Smith Shaw & McClay, Pittsburgh, PA, for appellant.

Charles F. Bennett (argued), Apple & Apple, P.C., Pittsburgh, PA, George D. Maurides, Bishoff, Maurides & Swabowski, Chicago, IL, for appellee.

Before: GREENBERG and ROTH, Circuit Judges, and VanARTSDALEN, District Judge [*].

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I.

### BACKGROUND

USX Corporation appeals the district court's grant of summary judgment to Prime Leasing, Inc. on all three counts of USX's complaint. USX's predecessor, USX Credit Corporation,[1] had made a loan to Prime for the purchase of telecommunications equipment that Prime had leased to MBank Alamo of San Antonio, Texas. MBank later was declared insolvent, and the purchaser of its assets, Bank One, Texas, N.A., disaffirmed the equipment leases. USX then repossessed and sold the telecommunications equipment, and subsequently brought this diversity action under 28 U.S.C. § 1332 to recover the difference between the unpaid debt from the original financing transaction and the resale price of the equipment. USX predicated its claims on Prime's failure to notify it of developments concerning the MBank leases. Prime's defense, which the district court found persuasive, was that nonrecourse provisions in certain agreements between USX and Prime precluded USX from

---

[*] Honorable Donald W. VanArtsdalen, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. For convenience, we will refer to both USX Corporation and USX Credit Corporation as "USX."

seeking any remedies beyond the repossession and resale of the leased equipment.

The facts relating to the formation of the transaction are not in dispute. On February 26 and 27, 1987, USX and Prime entered into the various agreements providing for USX's financing of Prime's purchase of the telecommunications equipment leased to MBank. The agreements between USX and Prime included a Loan Agreement, Installment Note ("Note"), Master Security Agreement and Assignment ("Security Agreement"), and two Collateral Assignments of Lease.[2]

The Note and the Security Agreement both contained nonrecourse provisions. The Note provided:

This Note is made pursuant to and in connection with the [Loan] Agreement and is to be paid from payments due or to become due and judgments recovered under the Master Lease Agreement between [Prime], as Lessor, and MBank Alamo as Lessee, and in the event of default, from the remarketing proceeds of the Equipment covered thereby. All the terms, conditions and covenants of the [Loan] Agreement and Security Agreement, including a full description of the rights of the holder hereof and the definitions set forth therein, are incorporated herein by reference. The Obligations of [Prime] under this Note shall be without recourse or liability against [Prime] for payment of the Note or any related costs or expenses except as to a breach by [Prime] of any assignment, representation, covenant, or warranty de-

scribed in Sections 4, 5(b) or 6 of the Security Agreement.[3]

Similarly, the Security Agreement provided:

[USX] shall only have recourse with respect to the Collateral as set forth in Section 1 herein,[4] except that [USX] shall have recourse to the general assets of [Prime] for any representation or warranties of [Prime] which shall have been false when made and for material misrepresentations or omissions made by [Prime] in any document provided by [Prime] to [USX] in connection with this transaction.

Further, and this is the crux of USX's claims in this action, the Collateral Assignments of Lease contained provisions requiring Prime to communicate to USX certain notices pertaining to the leases:

[Prime] hereby agrees ... (iii) to notify promptly [USX] or any subsequent assignee of any default or alleged default (of which [Prime] has knowledge) by any party to the Lease or any termination or alleged termination thereof, (iv) without prior written consent of [USX] or any subsequent assignee, not to extend, amend, supplement or terminate (except as expressly permitted therein), or agree to, or permit, any modifications, waiver or other alteration of the terms thereof, and (v) to deliver to [USX] all notices or other communications received by [Prime] in connection with the Lease or any aspect thereof.

The Loan Agreement, the Note, and the Security Agreement each contained a

---

**2.** The two Collateral Assignments relate to separate but contemporaneous leases of equipment to MBank, a main lease covering an AT & T System 85 and another lease covering several smaller systems. The Collateral Assignment for the AT & T lease was executed by Prime on February 26, 1987; however, the Collateral Assignment for the lease of the smaller systems was not executed until April 21, 1987. There is no explanation in the record for this disparity in execution dates. At any rate, the differing dates of the Collateral Assignments are not relevant to the issues presented on this appeal.

**3.** Sections 4, 5(b), and 6 of the Security Agreement set forth, *inter alia,* Prime's obligation to deliver lease payments to USX, Prime's warran-

ties as to the correctness of leases and security agreements, and Prime's obligations to preserve the collateral.

**4.** The collateral assigned to USX in Section 1 of the Security Agreement was as follows:

.... (i) the leases, security agreements and/or promissory notes (the 'Chattel Paper').... (ii) all documents relating to the Chattel Paper.... (the 'Related Documents'); (iii) all payments due and to become due under the Chattel Paper and the Related Documents; (iv) the equipment, goods, fixtures and other property subject to ... the Chattel Paper.... and (v) all proceeds ... of the items described in (i), (ii), (iii) and (iv) above.

choice-of-law clause, selecting Pennsylvania law for application to the agreement. In addition, both parties have supported their positions on this appeal with reference to Pennsylvania law and indicated during oral argument that Pennsylvania law applies.

The leased equipment was installed at MBank. Subsequently, on March 28, 1989, the United States Comptroller of the Currency declared MBank insolvent and appointed the Federal Deposit Insurance Corporation as its receiver. Most of the assets of MBank later were sold by the FDIC to Bank One. In December 1989, Bank One decided to replace the leased equipment and requested Prime to remove it by February 1, 1990. USX, as holder of the security interest in the equipment, foreclosed, took possession, and ultimately resold most of the telecommunications systems, but for substantially less than the payments USX would have collected under its financing agreements with Prime.

In March 1990, USX filed this action, contending that Prime had known throughout 1989 that the FDIC and Bank One wanted to disaffirm the leasing agreement, and that Prime had been negotiating with them, without disclosing such negotiations to USX, about restructuring the leases. USX claims that Prime's failure to disclose negotiations with, and notices from, the FDIC and Bank One constituted a breach of the notification provisions of the Collateral Assignments of Lease. In its complaint, USX alleged a first count based on breach of the specific provisions of the Collateral Assignments; a second count based on breach of the covenant of good faith and fair dealing; and a third count of tortious misrepresentation. Because USX already had taken possession of the equipment, it requested only the remedy of damages.

Following discovery, both parties moved for summary judgment, with USX requesting judgment establishing Prime's liability for breach of the specific notification provisions of the Collateral Assignments; and Prime requesting summary judgment in its favor on all three counts. The motions were referred to a magistrate judge whose report, dated February 4, 1992, recommended that summary judgment should be granted for Prime on Counts I and II of the Amended Complaint. The magistrate judge further noted that although Prime also had requested summary judgment on Count III, it had not made a legal argument on that point; therefore, the magistrate judge did not recommend at that time any particular disposition of that claim. By order dated February 26, 1992, the district court adopted the report and entered summary judgment in favor of Prime on Counts I and II. Prime again moved for summary judgment on Count III; by report dated June 5, 1992, the magistrate judge recommended summary judgment for Prime on that Count, reasoning that USX could not manufacture a tort out of a contract claim. On June 24, 1992, the district court adopted the report and granted summary judgment for Prime on Count III, thus completing disposition of the entire case.[5] USX then appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### DISCUSSION

■ The main dispute of the parties in the summary judgment motions before the district court and on this appeal involves the construction of the nonrecourse provisions of the Note and the Security Agreement, and whether the nonrecourse provisions preclude this action by USX based on Prime's alleged breach of the notice provisions of the Collateral Assignments. In granting summary judgment for Prime, the district court implicitly determined that there was no dispute of material facts, and that the legal construction of the parties' agreements could lead to only one conclusion, *i.e.*, that the nonrecourse provisions precluded any recovery of damages for breach of the notice provisions. Our review of this determination is plenary. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1530 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1313, 113

---

**5.** Prime filed a third-party complaint, but it was dismissed.

L.Ed.2d 246 (1991). Plenary review is also required because, unlike the fact questions inherent in determination of the intent of the contracting parties, construction of a contract necessarily involves a question of law. *Compare Vanguard Telecommunications, Inc. v. Southern New England Tel. Co.*, 900 F.2d 645, 650 (3d Cir.1990) (construction of contract is question of law subject to plenary review) *with Painewebber, Inc. v. Hartmann*, 921 F.2d 507, 510 (3d Cir.1990) (questions of contractual intent are questions of fact reviewed under clearly erroneous standard).

We also point out that the parties in their briefs do not point to any *aliunde* evidence of intent, but rather base their arguments on contrary readings of the plain language of the agreements. Accordingly, we review the case as they have presented it and predicate our conclusion on the relationship among the various contractual provisions.

Based on this review, we disagree with the district court's conclusion that the nonrecourse provisions of the Note and the Security Agreement should be imported into the separate Collateral Assignments. We therefore will reverse the grant of summary judgment in favor of Prime on Count I. However, we will affirm the grant of summary judgment to Prime on Counts II and III. We find that the allegation of breach of implied covenant in Count II is incompatible with Count I's allegations of breach of express covenants governing the same subject matter, *i.e.*, Prime's duty to give certain notices to USX. We also agree with the district court's rejection of the tortious misrepresentation claims of Count III, because those claims arise only from a duty imposed by contract and not some independent duty imposed by law. Finally, although USX has requested reversal of the district court's denial of partial summary judgment on Prime's liability as to Count I, we also will affirm that ruling, as we find that there are contested facts on issues other than the application of the nonrecourse provisions which preclude a determination of liability at present.

## A. *The Effect of the Nonrecourse Provisions*

■ Both USX and Prime correctly assert that the various agreements reflecting the financing of the MBank telecommunications equipment, *i.e.*, the Note, the Security Agreement, the Loan Agreement, and the two Collateral Assignments, are to be read in conjunction with one another. *See Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 108–09 (3d Cir.1986) (applying Pennsylvania law on relationship of separate but related agreements and holding that, in view of simultaneous execution and association with the same transaction, noncompetition agreement was an integral part of a separate sales agreement); *LCI Communications, Inc. v. Wilson*, 700 F.Supp. 1390, 1395 (W.D.Pa.1988) (Pennsylvania contract law required construing separate employment agreement and noncompetition agreement as two parts of a single employment contract); *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409, 1415 (E.D.Pa.1988) (stating that Pennsylvania contract law supports unified interpretation of two related agreements executed in settlement of CERCLA litigation).

The district court, in concluding that the nonrecourse provisions should be applied to the notice obligations of the Collateral Assignments, reasoned that Section 7.1 of the Loan Agreement incorporates the Security Agreement and its nonrecourse clause, and that the ninth paragraph of the Collateral Assignments states that the Loan Agreement is to govern in the event of conflicts or inconsistencies. Further, that court noted that the Loan Agreement obligated Prime to execute other documents reasonably required to effect the transaction, such as the Collateral Assignments.

However, regardless of the various interrelationships of the agreements, it is clear as a matter of contract law that the applicability of certain provisions may be limited to the documents in which they actually appear. Even where several instruments pertaining to one transaction must be construed together, " '[t]he provisions of one instrument are not thereby

imported bodily into another. The application of the rule does not result in actual consolidation of the several contracts.... Each of several instruments may be construed in the light of the others, without their being considered as one for all purposes.'" *Sterling Colorado Agency, Inc. v. Sterling Ins. Co.*, 266 F.2d 472, 476 (10th Cir.1959), *quoting Huyler's v. Ritz–Carlton Restaurant & Hotel Co.*, 1 F.2d 491, 492 (D.Del.1924); *see also* 17A C.J.S. *Contracts* § 298; 17A Am.Jur.2d *Contracts* § 388 ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect.... This does not mean that the provisions of one instrument are imported bodily into another; ... they may be intended to be separate instruments and to provide for entirely different things.").

■ Our independent examination of the nonrecourse provisions of both the Note and the Security Agreement leads us to conclude that each provision pertains only to certain breaches of the terms of the instrument in which it appears. Neither pertains to breaches of the notice provisions of the Collateral Assignments. The Note specifically limits application of its nonrecourse provision to breaches of the Note itself: "[t]he Obligations of [Prime] *under this Note* shall be without recourse or liability against Prime *for payment of the Note or any related costs and expenses....*" (Emphasis added.) The Security Agreement's nonrecourse provision also, by its terms, refers only to the document in which it appears and the debt it secures: "[USX] shall only have recourse with respect to the Collateral as set forth in Section 1 herein...." It is plain that neither of these nonrecourse provisions should be construed as limiting USX's remedies for Prime's breach of its obligations in the Collateral Assignments. Therefore, the nonrecourse provisions do not preclude USX from recovering damages against Prime for any of Prime's alleged breaches of the notice requirements of the Collateral Assignments.

We further observe that our result is consistent with the structuring of the transaction by the parties, for they contemplated that MBank would make its payments directly to USX. Thus, immediately following the nonrecourse provision, Section 3 of the Security Agreement provides, "[MBank] is, as of the date of the applicable schedule, directed to pay to [USX] all sums due and to become due pursuant to [the equipment lease]." Accordingly, as a practical matter, USX was looking to the lessee for payment of Prime's obligations under the Note and, so long as MBank or its successors made the payments on the lease, Prime's payments on the Note would be made as well. Therefore, in a sense, a default on the Note actually would be the default of the lessee, and consequently it was logical in that circumstance to limit USX's recourse to the collateral, which would be in the lessee's possession. Such considerations are not applicable here, for the default charged against Prime was its failure to adhere to the notification provisions of the Collateral Assignments.

B. *USX's Claim for Breach of Implied Covenant*

■ The district court, having found that the nonrecourse provisions precluded any claim for damages for breach of the express notice provisions of the Collateral Assignments, also concluded, without further discussion, that USX could not maintain the claim, pleaded in Count II, for breach of the covenant of good faith and fair dealing. Although we reinstate the claim for breach of the express notice provisions, we nonetheless find that the district court correctly granted summary judgment for Prime on this count. The covenant of good faith and fair dealing "involve[s] an *implied* duty to bring about a condition or to exercise discretion in a reasonable way." Howard O. Hunter, *Modern Law of Contracts*, ¶ 5.03, at 5–15 (1986) (emphasis added). Such implied covenants and any express terms of a contract are necessarily mutually exclusive—one can invoke "implied" terms only when there are no express terms in the contract relating to the particular issue.

In other words, in our case, since Prime expressly agreed in the Collateral Assignments to give USX certain notices concerning the status of the leases, such notices cannot be considered the subject of "implied" terms. "The law will imply a term only for omitted covenants. There can be no implied covenant as to any matter specifically covered by the written contract between the parties." *Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs.*, 310 Pa.Super. 165, 456 A.2d 552, 557 (1983) (rejecting tenants' claim of an implied covenant to pay only level utility charges, rather than individual metered charges (*citing Greek v. Wylie*, 266 Pa. 18, 109 A. 529 (1920))). Thus, it is only "[i]n the *absence of an express provision,* [that] the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corp. v. Building & Constr. Trades Council,* 202 Pa.Super. 118, 195 A.2d 134, 136–37 (1963) (emphasis added) (finding that city had no implied duty to commence arbitration for contractor allegedly harmed by picketing in attempt to organize subcontractor's employees). It is therefore clear that USX cannot assert a claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants. Accordingly, we will affirm the district court's grant of summary judgment for Prime on Count II.

### C. *USX's Claim for Tortious Misrepresentation*

In its Amended Complaint, USX further has asserted a Count III for tortious misrepresentation, based on the same acts of Prime that give rise to the contract claims. The district court granted summary judgment against USX on that count by order of June 24, 1992, which adopted the magistrate judge's report of June 5, 1992. The magistrate judge reasoned that a contract claim could not be converted to one in tort.

*See Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 587 A.2d 727, 730 (1991) (applying contract limitation period to action based on negligently performed real estate appraisal; " '[g]enerally, when the breach of a contractual relationship is expressed in terms of tortious conduct, the cause of action is properly brought in assumpsit and not in trespass' " (*quoting Raab v. Keystone Ins. Co.,* 271 Pa.Super. 185, 412 A.2d 638, 639 (1979))); *AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 373 Pa.Super. 572, 542 A.2d 90, 93–94 (1988) (rejecting, in action based on sale of allegedly inferior gasoline product, plaintiffs' attempt "to convert this contract action into a tort action so that they can recover punitive damages"), *aff'd in part on other grounds, rev'd in part on other grounds,* 526 Pa. 110, 584 A.2d 915 (1990). The district court further concluded that USX's Count III claim was not grounded in tort with the existence of a contract being merely collateral to the tort claim. *See Closed Circuit Corp. of America v. Jerrold Elecs. Corp.,* 426 F.Supp. 361, 364 (E.D.Pa.1977) (plaintiff could not avoid statute of limitations by asserting a tort claim, where cause of action was based on defendant's sale of allegedly defective electronics equipment).

On appeal, USX has argued in its opening brief, at 32, that because the district court had "read [the notice] obligation out of the parties' contract, USX's tort action could not contravene the policy limiting tort actions in the context of a contractual relationship." USX contends that the district court found the notice provisions to be "unenforceable." That, however, as pointed out by Prime, is a mischaracterization of the district court's reasoning and result. The district court and the magistrate judge did not ignore the notice provisions, did not consider them "unenforceable," and did not "read them out" of the agreements between USX and Prime. Rather, the district court interpreted the nonrecourse provisions of the Note and the Security Agreement as limiting USX's remedies against Prime, for *any* breach of the agreements surrounding the leasing and

financing transaction, to the right to take possession of the leased equipment and resell it. USX already had accomplished those steps by the time of the summary judgment motions, and was seeking to recover only the difference between the unpaid debt from the original financing transaction and the resale price of the equipment. Therefore, the basis for the district court's disposition was not that the notice provisions were "unenforceable," but that USX already had done everything permitted under the agreements to enforce them.

USX's tort claim is based on the same instances of Prime's failure to notify USX of correspondence and telephone calls with MBank's successors, as were its contract claims. USX did not allege any tort that was only "collateral" to a contractual relationship. The district court therefore correctly rejected Count III as an impermissible attempt to convert a contract claim into a tort claim. As we recently indicated in a case applying Pennsylvania law: "Breach of contract, without more, is not a tort." *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir.1993) (citing *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964)).

### D. *USX's Motion for Partial Summary Judgment on Count I*

In its arguments before the district court and on appeal, USX often has asserted that Prime does not contest that it has breached the notice provisions of the Collateral Assignments. USX therefore maintains that the district court erred in denying partial summary judgment on Prime's liability for Count I of the Amended Complaint.

To the contrary, Prime vigorously is contesting its liability on Count I. Prime argues, for example, that the doctrine of "inquiry notice" establishes Prime's adequate fulfillment of its duties under the Collateral Assignments and that USX cannot demonstrate that it would have been possible to prevent Bank One's disaffirmance of the equipment leases. These arguments create apparent fact questions that preclude any immediate judgment for USX on liability as to Count I. On remand,

Prime will have the opportunity to raise defenses such as the foregoing. However, we note that Prime no longer will be able to avail itself of the position, which we resolve against it, that the nonrecourse provisions of the Note and Security Agreement should apply to breaches of the Collateral Assignments.

### III.

### CONCLUSION

We will reverse the district court's order of February 26, 1992, insofar as that order granted Prime's motion for summary judgment on Count I of USX Corporation's Amended Complaint. We will affirm the February 26, 1992 order insofar as it granted Prime's motion for summary judgment on Count II and insofar as it denied USX's motion for partial summary judgment on Count I. We will affirm the district court's order of June 24, 1992, granting Prime's motion for summary judgment on Count III. We will remand the case to the district court for further proceedings consistent with this opinion. The parties will bear their own costs on this appeal.