**MILL RUN ASSOCIATES, Plaintiff**

v.

**LOCKE PROPERTY COMPANY, INC. and William E. Locke, Jr., Defendants**

No. Civ.A. 02–8042.

United States District Court, E.D. Pennsylvania.

July 7, 2003.

Malcolm J. Gross, Gross, McGinley, Labarre & Eaton, LLP, Allentown, PA, for Plaintiff.

Alexander D. Bono, Blank Rome Comisky & McCauley, LLP, William H. Platt, II, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

SCUDERI, United States Magistrate Judge.

This is an action commenced on September 9, 2002, by Plaintiff, Mill Run Associates ("Mill Run" or "Plaintiff") against Defendants, Locke Property Company, Inc. ("Locke Property") and William E. Locke, Jr. ("Locke") (collectively, "Defendants"), arising out of disputes related to the sale of real property. On November 21, 2002, Plaintiff filed an Amended Complaint. On December 17, 2002, Defendants filed an Answer with Affirmative Defenses, and Defendant Locke Property simultaneously filed a Counterclaim. Presently before the court are Defendants' Motion to Dismiss Counts I and III of Plaintiff's Amended Complaint, and all three (3) counts as to Defendant Locke, individually; and Plaintiff's Motion to Dismiss all thirteen (13) counts of the Counterclaim.

## I. Facts and Procedural History

On January 31, 2001, Mill Run and Locke Property entered into an Agreement of Sale (the "Agreement"), by which Mill Run agreed to sell, and Locke Property agreed to purchase, Lot 11 of a Subdivision owned by Mill Run in Upper Macungie Township, Lehigh County, Pennsylvania (the "Township"), for the sum of $2,786,000. The Agreement provided that Locke Property would deposit $150,000 as down payment (the "Deposit") with an escrow agent. The Agreement also provided that Locke Property had a period of sixty (60) days (the "Review Period") in which to perform the buyer's "due diligence," which included the performance of various tests, studies and inspections of Lot 11, and a determination of the "suitability and feasibility" of Lot 11 for Locke Property's intended development and use. In addition, in order to purchase Lot 11, Locke Property had to obtain a permit from the Township (the "Permit"). The Agreement further provided that Locke Property had the right to terminate the Agreement at any time prior to the expiration of the Review Period, in which event the Deposit would be refunded, the Agreement would become null and void, and the parties would be relieved of further liability under the Agreement. According to Defendants, Locke Property made the Agreement based upon negotiations and course of dealings with Summit Management, which the Agreement denominated as Mill Run's broker, and with John Crampsie of Summit Management ("Crampsie"), who was denominated as Mill Run's individual agent.

On May 7, 2001, the parties entered into a First Amendment to Agreement of Sale, which extended the Review Period to May 31, 2001. The parties subsequently entered into Second, Third and Fourth Amendments to Agreement of Sale, which further extended the Review Period to July 31, 2001, August 31, 2001, and September 30, 2001, respectively. Plaintiff avers that all four (4) Review Period exten-

sions were requested by Locke Property. Locke Property counters that, although it repeatedly notified Mill Run, through Summit Management, that it sought to terminate the Agreement, Mill Run represented to Lock Property that Lot 11 was readily permittable and assisted Locke Property with the permitting process.

By letter dated September 28, 2001, counsel for Locke Property gave written notice to Mill Run that it was exercising its right to terminate the Agreement (the "Termination Notice"). The Termination Notice stated the following:

> Pursuant to the applicable provisions of the [Agreement of Sale], as amended, including, without limitation, Paragraph 5 entitled "Review Period," notice is hereby given that Locke Property Company, Inc. does hereby elect to terminate the above-referenced Agreement. By copy of this letter to the Escrow Agent, I am directing them to return the Deposit together with interest directly to me for return to Locke Property Company, Inc.

*See* Amended Complaint, attached as Ex. "F." Mill Run returned the deposit money. However, Locke Property avers that Mill Run, through Summit Management and Crampsie, continued to encourage Locke Property to obtain the Permit and represented that the Agreement would be reinstated when the Permit was obtained. As a result, Defendants aver that they continued to expend thousands of dollars to acquire the Permit.

Meanwhile, Mill Run placed Lot 11 back on the market for sale sometime after September 2001, and subsequently entered into negotiations to sell Lot 11 to First Industrial Acquisitions, Inc. ("First Industrial"). On June 5, 2002, First Industrial issued a Letter of Intent to Mill Run to purchase Lot 11, after which First Industrial and Mill Run began drafting an agreement of sale.

Also on June 5, 2002, the Township issued the Permit to Locke Property for Lot 11, after which Locke Property again sought to purchase the property from Mill Run. Thereafter, First Industrial notified Mill Run that both it and its prospective tenant had received information from Locke Property and Defendant Locke that they were asserting ownership of, an equitable interest in, or "control" of, Lot 11. As a result, First Industrial questioned Mill Run's ability to perform on the anticipated agreement of sale, and requested additional warranties and assurances from Mill Run concerning Lot 11.

On September 9, 2002, Mill Run commenced the instant action by filing a Complaint with the Court of Common Pleas of Lehigh County, Pennsylvania. On October 24, 2002, Defendants removed the action to the United States District Court for the Eastern District of Pennsylvania. On November 7, 2002, Defendants filed a Motion to Dismiss Plaintiff's Complaint, as well as an Answer, Affirmative Defenses and Counterclaim to Plaintiff's Complaint.

Meanwhile, on November 13, 2002, Defendants filed a Praecipe for *Lis Pendens,* which further encumbered the title to Lot 11.

On November 21, 2002, Mill Run filed an Amended Complaint asserting three (3) counts: (1) preliminary and permanent injunctive relief enjoining Defendants from interfering with Mill Run's negotiations with First Industrial or any other prospective buyer of Lot 11, and striking or withdrawing the Praecipe for *Lis Pendens* which Defendants filed in this action; (2) declaratory judgment that Defendants have no right, title, interest or claim to Lot 11, and that Mill Run's title is free and clear; and (3) intentional interference with prospective contractual relations. On December 17, 2002, Defendants filed a Motion to Dismiss Counts I and III of Plaintiff's

Amended Complaint, and to dismiss Counts I, II and III as to Defendant Locke, individually. Defendants simultaneously filed an Amended Answer, Affirmative Defenses and Counterclaim to the Amended Complaint, asserting thirteen (13) counts: (1) breach of contract—specific performance; (2) anticipatory breach of contract—specific performance; (3) breach of contract; (4) fraudulent inducement; (5) negligent misrepresentation; (6) breach of covenant of good faith and fair dealing; (7) quantum meruit; (8) promissory estoppel; (9) unjust enrichment; (10) civil conspiracy; (11) failure of essential purpose; (12) novation of contract; and (13) declaratory judgment as to rights and liabilities under the Agreement, and reimbursement of costs and expenses in reliance on Mill Run's alleged promise to reinstate the Agreement once the Permit was obtained. On January 6, 2003, Plaintiff filed a cross-Motion to Dismiss all thirteen (13) counts of the Counterclaim.

## II. Standard of Law

The applicable inquiry under Rule 12(b)(6) is well-settled. Courts are required to accept all well-pleaded allegations in the Complaint as true and to draw all reasonable inferences in favor of the non-moving party. *See In re Rockefeller Center Properties, Inc.,* 311 F.3d 198, 215 (3d Cir.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); and *Allegheny General Hospital v. Philip Morris, Inc.,* 228 F.3d 429, 434–35 (3d Cir.2000)). The inquiry is not whether the parties will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Dismissal under Rule 12(b)(6) is not appropriate unless "it appears beyond doubt that the [non-movant]

can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Rockefeller,* 311 F.3d at 215. In determining whether dismissal is appropriate, the Court is required to apply Pennsylvania law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (stating that, in diversity cases, the Federal Court must apply the law of the state where the court is sitting).

## III. Defendants' Motion to Dismiss Counts I and III of Plaintiff's Amended Complaint, and Counts I Through III as to Defendant Locke, Individually

### A. Count I of the Amended Complaint: Injunctive Relief

Defendants seek dismissal of Count I of the Amended Complaint, in which Plaintiff seeks preliminary and permanent injunctive relief enjoining Defendants from interfering with Mill Run's negotiations with First Industrial or any other prospective buyer of Lot 11, and striking or withdrawing the Praecipe for *Lis Pendens* which Defendants filed in this action.

"[T]he grant of injunctive relief is an extraordinary remedy ... which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988). In order to be entitled to injunctive relief, the Court must weigh four (4) factors: (1) the likelihood that Plaintiff will prevail on the merits; (2) the extent to which Plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which Defendants will suffer irreparable harm if injunctive relief is granted; and (4) the public interest. *See Opticians Ass'n. v. Independent Opticians,* 920 F.2d 187, 191–192 (3d Cir.1990). Because injunctive relief requires "irrepa-

rable harm," it follows that such equitable relief is not available when a plaintiff has an adequate remedy at law. *See Barnes v. American Tobacco Co.*, 989 F.Supp. 661, 667 (E.D.Pa.1997).

■■■ Under Pennsylvania law, the loss of a business opportunity, or advantage to market real estate, may be characterized as "irreparable injury" for purposes of injunctive relief where the damages can be estimated "only by conjecture and not by an accurate pecuniary standard." *See Sovereign Bank v. Harper*, 449 Pa.Super. 578, 674 A.2d 1085, 1093 (1996). Here, accepting as true Plaintiff's allegations as set forth in the Amended Complaint, Defendants' conduct has precluded Plaintiff from selling Lot 11 to First Industrial, or to market the property to any other third parties. Although Defendants argue that any subsequent sale of Lot 11 will result in potential profit or loss that is readily calculable and, therefore, not "irreparable," it is unclear whether problems related to Mill Run's ability to sell Lot 11 has resulted in other damages that may be less apparent, such as damages caused by changes in market conditions or the loss of favorable terms that may otherwise have attached to the property, but for Defendants' alleged conduct. Because it is unclear at this stage of litigation whether the alleged harm suffered by Plaintiff is fully compensable with monetary damages, Defendants' motion to dismiss Count I of the Amended Complaint is denied.

**B. Count III of the Amended Complaint: Intentional Interference with Prospective Contractual Relations**

■■ Defendants also seek dismissal of Count III of the Amended Complaint, in which Plaintiff alleges that Defendants intentionally interfered with prospective contractual relations. Defendants argue that this claim should be dismissed on the basis of the "Gist of the Action" doctrine because the "gist" of Plaintiff's Amended Complaint sounds in contract rather than tort, while Plaintiff counters that the "gist" of the action sounds in tort rather than contract. *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.2002) (stating "gist of the action" doctrine designed to maintain conceptual distinction between breach of contract claims and tort claims). Plaintiff's Amended Complaint avers that the contract between Plaintiff and Defendants was terminated by Defendants, and that Defendants subsequently interfered with Plaintiff's contractual relations with a third party. As a result, the Court is unable to determine at this stage of litigation whether this action properly sounds in contract or tort. Therefore, I find that Count III of the Amended Complaint should not be dismissed on the basis of the "gist of the action" doctrine.

■■ Under Pennsylvania law, the elements of intentional interference with prospective contractual relations are: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) a purpose or intent to harm an existing relationship or to prevent a prospective relationship from accruing; (3) the absence of privilege or justification on the part of the defendant; and (4) the occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct. *Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 578 (E.D.Pa.2002). A "prospective contract" is " 'something less than a contractual right, something more than a mere hope.' ... [I]t exists if there is a reasonable probability that a contract will arise from the parties' current dealings." *Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir.1994) (quoting *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898–899 (1971)).

■ Here, Plaintiff alleges in its Amended Complaint that Defendants wrongfully interfered with Mill Run's prospective contractual relations with First Industrial over the sale of Lot 11, and that they did so with intent to harm. *See* Amended Complaint at ¶ 41. I find that the Amended Complaint sufficiently pleads the tort of intentional interference with prospective contractual relations. Therefore, Defendants' motion to dismiss Count III of the Amended Complaint is denied.[1]

## C. Claims Against Defendant Locke, Individually

Defendants also move to dismiss Counts I, II and III of the Amended Complaint as to Defendant Locke, individually, by operation of the corporate shield doctrine; and, for purposes of Counts I and II, because he was not a party to the Agreement between Locke Property and Plaintiff Mill Run regarding the sale of Lot 11.

■ As to Counts I and II, Plaintiff Mill Run concedes that the Agreement was solely between it and Locke Property. *See* Amended Complaint at ¶ 7 and Ex. "A." However, as previously stated, Plaintiff argues that the "gist" of the action sounds in tort rather than contract—specifically, alleged tortious conduct by Defendants that occurred after Defendants allegedly terminated the contract between Plaintiff Mill Run and Defendant Locke Property. Because the Court is required to accept all well-pleaded allegations in the Amended Complaint as true and to draw

all reasonable inferences in favor of the non-moving party, Defendants' contract-based argument for dismissal of Defendant Locke, individually, is denied.

■ Defendants also argue that Locke cannot be individually liable on any claim pursuant to the corporate shield doctrine, which generally provides that the corporate entity should be recognized and upheld unless specific circumstances warrant "piercing the corporate veil" and holding officers and/or employees of the corporation individually liable. *See Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967). Plaintiff counters that the corporate shield doctrine is inapplicable in the instant case, and that Locke may be held individually liable under the Participation Theory of tort liability.

■ The Participation Theory of tort liability, which is recognized in Pennsylvania, provides as follows:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

---

1. The Court is cognizant of language in *Stanley v. Exxon Corp.*, 824 F.Supp. 52 (E.D.Pa. 1993), a case relief upon by Defendants, suggesting that the tort of intentional interference with prospective contractual relations cannot be committed by a corporate entity. *See* 824 F.Supp. at 54 ("In the context of tortious interference, the wrong is, by definition, committed by the individual, not the corporation"). However, the elements of this tort do not require that the defendant be an individual. In addition, the Court is not aware of any other case suggesting that corporate entities cannot be commit this tort. *See, e.g., Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996 (3d Cir.1994); *Brunson*, 239 F.Supp.2d at 550; *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922 (E.D.Pa. 2002). As a result, I conclude that Plaintiff's claim for intentional interference with prospective contractual relations should not be dismissed on the basis of *Stanley*.

*Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86, 90 (1983) (quoting 3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137, p. 207 (perm. ed. rev. 1975)). Importantly, applying the Participation Theory is not the same as piercing the corporate veil because the purpose of the latter is to hold an owner liable because his or her corporation "is something less than a bona fide independent entity." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978); *A & F Corp. v. Brown,* 1996 WL 466909 (E.D.Pa. Aug.15, 1996). Because there is no averment in the Amended Complaint that Locke Property is "something less than a bona fide independent entity," it is clear that Plaintiff does not seek to impose individual liability on Defendant Locke by piercing the corporate veil. As a result, the corporate shield doctrine is inapplicable. Rather, Plaintiff avers in its Amended Complaint that "Locke and/or Locke Property, through Locke," intentionally interfered with prospective contractual relations between Mill Run and First Industrial over the sale of Lot 11. *See* Amended Complaint at ¶ 41. Accepting the averments in the Amended Complaint as true, Locke would be individually liable for alleged tortious conduct committed outside the scope of his employment, and could be found individually liable under the Participation Theory for alleged tortious conduct committed while acting as an agent or employee of Locke Property. As a result, Defen-

dants' motion to dismiss Counts I, II and III of the Amended Complaint as to Defendant Locke, individually, is denied.[2]

## IV. Plaintiff's Motion to Dismiss Counts I Through XIII of Defendant Locke Property's Counterclaim

### A. Count I Through Count III of the Counterclaim

Plaintiff Mill Run first seeks dismissal of Counts I, II and III of Defendant Locke Property's Counterclaim, which allege breach of contract—specific performance, anticipatory breach of contract—specific performance, and breach of contract, respectively. Specifically, Plaintiff argues that these claims should be dismissed because its real estate agent, Summit Management, lacked authority to bind Plaintiff, and because the claims are barred by the Statute of Frauds.

### 1. Whether Summit Management had authority to bind Mill Run

In its Counterclaim, Defendant Locke Property alleges, *inter alia,* that: (1) Mill Run's real estate agent, Summit Management, by and through Crampsie, urged Locke Property to continue to seek the Permit for Lot 11 from the Township after Locke Property had terminated the Agreement; (2) Summit Management and Crampsie represented that the Agreement

---

**2.** Defendants again rely upon *Stanley, supra,* this time for the proposition that the Participation Theory of liability does not apply in the context of a claim for intentional interference with prospective contractual relations. In *Stanley,* the United States District Court for the Eastern District of Pennsylvania stated:

> Plaintiffs are precluded from stating a valid claim against [the individual/employee-defendant] for tortious interference, since under Pennsylvania law, an employee of a corporation acting with in the scope of his

employment *cannot tortiously interfere with the contract of the corporation.*

824 F.Supp. at 54 (citing *Michelson v. Exxon Research and Engr. Co.*, 808 F.2d 1005, 1008 (3d Cir.1987)) (emphasis added). Here, the prospective contract that Defendant Locke allegedly interfered with was between Mill Run and First Industrial, and not between Locke Property and any other party. Because Plaintiff does not allege that Locke tortiously interfered with one (1) of his own company's contracts, the Court finds that the rationale set forth in *Stanley* is inapplicable.

would be reinstated once the Permit was obtained; (3) Locke Property relied upon such representations when proceeding before the Township; and (4) after the Permit was received by Locke Property, Mill Run subsequently reneged on the alleged prior representations and refused to sell Lot 11 to Locke Property. *See* Counterclaim at ¶¶ 19–24. Plaintiff argues that Locke Property failed to aver that Summit Management had any authority from Mill Run to make such representations.

■ I find that the basis of Plaintiff's argument in this regard to be incorrect. The Counterclaim explicitly identifies Summit Management as Mill Run's broker, and Crampsie as "the individual agent and or broker for Mill Run." *See* Counterclaim at ¶¶ 2–3. In addition, the Counterclaim contains numerous averments that Mill Run acted through Summit Management (and Crampsie). *See, e.g.,* Counterclaim at ¶¶ 6–8, 10–12, 14, 16, 18–21, 24. The burden of establishing the existence of an agency relationship, and whether such an agency relationship is of a type legally sufficient to attach liability, clearly rests with the party asserting it. However, such proof is not necessary at this stage of litigation. As a result, Plaintiff's Motion to Dismiss Counts I, II and III of the Counterclaim on this basis is denied.

### 2. *Applicability of the Statute of Frauds*

The Statute of Frauds provides that no interest in land may be assigned, granted or surrendered unless by deed or note, in writing, and signed by the parties or their agents. *See* 33 P.S. § 1 (emphasis added). According to Plaintiff, Defendant Locke Property bases Plaintiff's liability on an alleged oral modification of the original Agreement, and actions taken in furtherance thereof. Therefore, Plaintiff argues that any such liability is explicitly barred by the Statute of Frauds. Defendant

Locke Property counters that dismissal is not warranted because: (1) the Statute of Frauds is an affirmative defense; (2) the Counterclaim alleges that essential terms were agreed to and that intent could be construed through conduct and writings; (3) written contracts can be modified by subsequent course of conduct; and (4) the Counterclaim adequately alleges partial performance.

■ Under Federal Rule of Civil Procedure 8(c), the Statute of Frauds constitutes an affirmative defense to a civil action. *See* F.R.C.P. 8(c) (Stating "in pleading to a preceding pleading, a party shall set forth affirmatively ... statute of frauds"). "The Statute of Frauds does not void those oral contracts relating to land which fail to comply with the Statute's formal requirements. It is to be used as a shield and not as a sword, as it was designed to prevent frauds, not to encourage them." *Fannin v. Cratty,* 331 Pa.Super. 326, 480 A.2d 1056, 1059 (1984) (citing *Zlotziver v. Zlotziver,* 355 Pa. 299, 49 A.2d 779 (1946)). As a result, the only exception to the affirmative defense rule that allows the Statute of Frauds to be raised by a Rule 12(b)(6) motion to dismiss occurs when "the defect appears on the face of the pleading." *Id.* (quoting *Continental Collieries v. Shober,* 130 F.2d 631, 635–636 (3d Cir.1942)). Such a defect occurs on the face of the pleading when the pleading specifically refers to an "oral" contract. *Id.* (citing *Currier v. Knapp,* 442 F.2d 422, 423 (3d Cir.1971)).

■ Here, the only explicit reference in the Counterclaim to an "oral" agreement occurs in the context of a subsequent modification by conduct. *See* Counterclaim at ¶ 86 ("an actual, present and substantial controversy exists between Locke Property and Mill Run concerning the Agreement, and Locke Property's entitlement to Purchase Lot 11 under the terms

of the Agreement, Mill Run's custom and practice, and any and all oral or written agreements or representations subsequently incorporated therein"). After discovery is completed, it may become clear that the entire basis of Locke Property's theory of liability rests upon alleged oral modifications to the Agreement. For purposes of dismissal, however, the Court notes that the Counterclaim does not explicitly seek to enforce an oral agreement, and that the focus of the Counterclaim is the Agreement, which is in writing and attached to the Counterclaim as an exhibit. Because I conclude that a defect does not occur on the face of the Counterclaim, I decline to dismiss Counts I through III of the Counterclaim on the basis of the Statute of Frauds.[3]

### B. Count IV Through Count VI of the Counterclaim: The "Gist of the Action" Doctrine

Plaintiff next seeks dismissal of Counts IV, V and VI of Defendant Locke Property's Counterclaim, which allege fraudulent inducement, negligent misrepresentation, and breach of the covenant of good faith and fair dealing, respectively, because they are barred by the "Gist of the Action" doctrine. That is, Plaintiff argues that because the "gist" of the Counterclaim sounds in contract, all tort-based counts should be dismissed. Defendant Locke Property responds that the tort counterclaims should not be dismissed because they are collateral to the contract counterclaims, and because alternative pleading is permitted under Rule 8(c).

■ As previously explained, the "Gist of the Action" doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims, and it serves to preclude plaintiffs from re-casting ordinary breach of contract claims into tort claims. *eToll,* 811 A.2d at 14 (citing *Bash v. Bell Tel. Co.,* 411 Pa.Super. 347, 601 A.2d 825, 829 (1992)). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Auth. v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) *(en banc)* (quoting *Phico Ins. Co. v. Presbyterian Med. Srvs. Corp.,* 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). Thus, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 104 (3d Cir.2001), *cert. denied,* 534 U.S. 1162, 122 S.Ct. 1173, 152 L.Ed.2d 116 (2002) (quoting *Bash,* 601 A.2d at 830). However, when contract claims are collateral to tortious conduct, both contract and tort claims may be maintained. *See, e.g., Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.,* 40 F.Supp.2d 644, 651 (W.D.Pa.1999) (holding "a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious").

■ Here, the Counterclaim contains both contract and tort claims, which are pleaded in the alternative. This type of alternative pleading is permissible under Federal Rule of Civil Procedure Rule 8(e).

---

**3.** Because the Court concludes that there is no defect on the face of the pleadings for purposes of dismissing these claims pursuant to the Statute of Frauds, it is not necessary for the Court to consider Locke Property's three (3) alternative grounds related to the Statute of Frauds. As previously suggested, however, the alternative arguments may become relevant if, upon completion of discovery and submission of dispositive motions for summary judgment, it appears that the sole basis of Locke Property's theory of liability rests upon alleged oral modifications to the Agreement.

*See* F.R.C.P. 8(e) (stating "[a] party may state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds"). In any event, it is unclear at this stage of litigation whether the "gist" of the action sounds in contract or tort, particularly as one of the primary issues between the parties is whether the Agreement, the Agreement with oral modifications, or some other agreement, existed between the parties. As a result, I decline to dismiss Counts IV through VI of the Counterclaim by operation of the Gist of the Action Doctrine.[4]

### C. Count IV of the Counterclaim: Fraudulent Inducement

Plaintiff also seeks dismissal of Counts IV of the Counterclaim, which alleges fraudulent inducement, because such a claim may not be based upon the failure to do something in the future, and because there was no justifiable reliance.

■■■ Under Pennsylvania law, fraud is defined as "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Lind v. Jones,* 135 F.Supp.2d 616, 620 (E.D.Pa.2001) (citing *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1251 (1983)). A claim of fraudulent inducement requires: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Id.* (citing *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994)).

■■■ Here, Defendant Locke Property alleges that Mill Run engaged "in false, deceitful and misleading courses of conduct that were designated and intended to deceive Locke Property, and to fraudulently induce Locke Property to continue under the terms of the Agreement," and that Locke Property "detrimentally relied in good faith on the conduct of Mill Run and its agents." *See* Counterclaim at ¶¶ 40–42. Because Locke Property pleads the elements of a claim for fraudulent inducement, the claim is sufficient for purposes of this motion to dismiss. As a result,

---

**4.** Similarly, Plaintiff seeks dismissal of Counts V and VI of the Counterclaim by operation of the Economic Loss Doctrine. Under Pennsylvania law, the Economic Loss Doctrine precludes recovery for economic loses in tort actions where the party seeking recovery has suffered no physical or property damage. *Spivack v. Berks Ridge Corp.,* 402 Pa.Super. 73, 586 A.2d 402, 405 (1991). However, the Third Circuit has described the "economic-loss doctrine" test as "prohibit[ing] plaintiffs from recovering in tort economic losses to which their entitlement flows *only* from a contract." *See Bohler–Uddeholm,* 247 F.3d at 104 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir. 1995)) (emphasis added). In *Bohler–Uddeholm,* the Third Circuit explained that the Economic Loss Doctrine developed in the context of courts precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself. 247 F.3d at 104 n. 11 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866–71, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). As a result, although the Third Circuit determined that although both the Economic Loss Doctrine and the Gist of the Action Doctrine are applicable to tort actions that inappropriately stem from contract liability, the Gist of the Action test "is a better fit" for non-products liability cases. *Id.* I find the Third Circuit's reasoning to be persuasive. As a result, I also decline to dismiss Counts V and VI of the Counterclaim by operation of the Economic Loss Doctrine.

Plaintiff's Motion to Dismiss Count IV of the Counterclaim is denied.

### D. Count V of the Counterclaim: Negligent Misrepresentation

Plaintiff also seeks dismissal of Counts V of the Counterclaim, which alleges negligent misrepresentation, for the same reasons it opposes the aforementioned claim of fraudulent inducement—namely, because such a claim may not be based upon the failure to do something in the future; and because there was no justifiable reliance.

Under Pennsylvania law, negligent misrepresentation requires proof of: (1) misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with intent to induce another to act on it; and (4) which results in injury to the party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 561 (1999) (citing Restatement (Second) of Torts § 552). Here, Defendant Locke Property alleges that Plaintiff Mill Run "intended to induce Locke Property to proceed with its investigations and permitting [of Lot 11]," and that Locke Property "justifiably relied on Mill Run's information, representations, continuing conduct, customs and practices." *See* Counterclaim at ¶¶ 47–48. Proof of Locke Property's allegations need not be shown for purposes of notice pleading. In addition, the issue of whether there was "justifiable reliance" cannot be determined at this time. Therefore, Plaintiff's Motion to Dismiss Count V of the Counterclaim is denied.

### E. Count VI of the Counterclaim: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff also seeks dismissal of Count VI of the Counterclaim, in which Defendant Locke Property alleges breach of the covenant of good faith and fair dealing. Specifically, Plaintiff argues that Count VI should be dismissed because there is no confidential or fiduciary relationship between the parties.

 Section 205 of the Restatement (Second) of Contracts provides that "[e]very contract imposes on each party a duty of good faith and fair dealings in its performance and enforcement." *See Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986), *aff'd*, 516 Pa. 291, 532 A.2d 399 (1987). Under Pennsylvania law, however, the duty of good faith and fair dealing may not be implied when, *inter alia*, "there is no confidential or fiduciary relationship between the parties." *Agrecycle, Inc. v. City of Pittsburgh*, 783 A.2d 863, 867 (Pa.Comm.2001); *see also USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433 (3d Cir.1993) (recognizing that Pennsylvania courts recognize duty of good faith only in limited situations). Here, the relationship between Plaintiff Mill Run and Defendant Locke Property was contractual and not confidential or fiduciary. Moreover, Locke Property has not plead to the contrary. Therefore, Count VI of the Counterclaim is dismissed.

### F. Count VII of the Counterclaim: Quantum Meruit

Plaintiff next seeks dismissal of Count VII of the Counterclaim, in which Defendant Locke Property alleges quantum meruit. Specifically, Plaintiff argues that Locke Property fails to state a claim for quantum meruit because it alleges the existence of an express contract; services were not performed for the benefit of Mill Run or in expectation of payment; and there was no unjust enrichment.

 Quantum meruit is a cause of action in quasi-contract which seeks a form of restitution where one person has been unjustly enriched at the expense of another. *Mitchell v. Moore*, 1999 PA Super 77,

729 A.2d 1200, 1202 n. 2 (1999). There-fore, a claim of quantum meruit raises the issue of whether a party has been unjustly enriched, which requires proof of the ele-ments of unjust enrichment. *Id.* As a result, it is necessary for the party seeking to recover under quantum meruit to show that: (1) a benefit was conferred; (2) there was appreciation of such benefit; and (3) acceptance and retention of such benefit occurred under circumstances making it inequitable for the benefitting party to re-tain the benefit without restitution. *Green Stripe, Inc. v. Berny's Internacionale*, 159 F.Supp.2d 51, 56 (E.D.Pa.2001); *Mitchell*, 729 A.2d at 1203. No implied-in-fact con-tract can be found when the parties have an express agreement dealing with the same subject. *In re Matter of Penn Cent. Transp.*, 831 F.2d 1221, 1229 (3d Cir.1997); *First Wisconsin Trust Co. v. Strausser*, 439 Pa.Super. 192, 653 A.2d 688 (1995).

██ Here, the Counterclaim states that "Mill Run implied or promised to pay a reasonable amount for the labor, materi-als, and expenses incurred by Locke Prop-erty" in the event that Mill Run breached the Agreement *"and/or any and all agree-ments or representations subsequently in-corporated therein."* *See* Counterclaim at ¶ 56 (emphasis added). Given the broad language of the Counterclaim, I conclude that this cause of action cannot be dis-missed on the basis that Defendant Locke Property alleges the existence of only an express contract. Similarly, it is sufficient at this stage of litigation, and under the applicable notice pleading standard, for Locke Property to allege that its actions were carried out "to the benefit of Mill Run," without providing proof. *See* Coun-terclaim ¶ 57. As a result, Plaintiff's Mo-tion to Dismiss Count VII of the Counter-claim is denied.

### G. Count VIII of the Counterclaim: Promissory Estoppel

Plaintiff next seeks dismissal of Count VIII of the Counterclaim, in which Defen-dant Locke Property alleges promissory estoppel, because the claim is based upon an oral agreement that allegedly violates the Statute of Frauds.

██ As previously discussed, I de-cline to dismiss the Counterclaim at this stage of litigation on the basis of an al-leged violation of the Statute of Frauds. As a result, it is necessary to consider whether Count VIII sets forth a valid claim of promissory estoppel. The ele-ments for a cause of action for promissory estoppel are: (1) misleading words, con-duct or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrep-resentation by the party seeking to assert the estoppel; and (3) no duty of inquiry on the party seeking to assert estoppel. *See Kimberton Chase Realty Corp. v. Main Line Bank*, 1997 WL 698487 (E.D.Pa.1997) (citing *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa.Super.1997)). Here, Defendant Locke Property alleges that Plaintiff Mill Run's conduct constitut-ed a promise to perform under the terms of the Agreement, and that Locke Proper-ty justifiably relied upon such conduct to its detriment. *See* Counterclaim at ¶¶ 60–64. Because I find that this allegation sets forth a valid claim of promissory estoppel, Plaintiff's Motion to Dismiss Count VIII of the Counterclaim is denied.

### H. Count IX of the Counterclaim: Unjust Enrichment

Plaintiff next seeks dismissal of Count IX of the Counterclaim, in which Defen-dant Locke Property alleges unjust enrich-ment, because there was no reasonable reliance by Defendant Locke Property,

and because Plaintiff Mill Run did not receive any benefit.

■ As previously discussed, the elements of unjust enrichment are: (1) a benefit conferred; (2) appreciation of such benefit; and (3) acceptance and retention of such benefit under circumstances making it inequitable for the benefitting party to retain the benefit without restitution. *Green Stripe,* 159 F.Supp.2d at 56. Here, Defendant Locke Property alleges that "it engaged in conduct and performed valuable services" for Plaintiff Mill Run regarding Lot 11, and that it did so "in reasonable reliance" on Mill Run's conduct and representations. *See* Counterclaim at ¶ 67. As previously discussed, the reasonableness of any such reliance on the part of Locke Property is an issue for the factfinder. Moreover, contrary to Plaintiff Mill Run's argument that it received no benefit as a result of Defendants' conduct, it is sufficient at this stage of litigation for Locke Property to allege that such a benefit was, in fact, conferred.[5] As a result, Plaintiff's Motion to Dismiss Count IX of the Counterclaim is denied.

### I. Count X of the Counterclaim: Civil Conspiracy

Plaintiff next seeks dismissal of Count X of the Counterclaim, in which Defendant Locke alleges civil conspiracy, because there is no valid underlying tort, and because Plaintiff Mill Run cannot conspire with its own agent.

■ Under Pennsylvania law, civil conspiracy requires an agreement among two (2) or more persons "to do an unlawful act or to do an otherwise lawful act by unlawful means." *GMH Associates, Inc. v. Prudential Realty Group,* 2000 PA Super 59, 752 A.2d 889 (2000) (quoting

*Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 472 (1979)). As a result, civil conspiracy requires both an agreement and either a criminal act or an intentional tort. *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396 (3d Cir.2000); *Advanced Power Systems v. Hi–Tech Systems,* 801 F.Supp. 1450 (E.D.Pa.1992). In addition, under Pennsylvania law, a corporation cannot conspire with itself, or with its officers and agents, when they act solely for the corporation and not on their own behalf. *Tyler v. O'Neill,* 994 F.Supp. 603, 613 (E.D.Pa. 1998), *aff'd,* 189 F.3d 465 (3d Cir.1999) (citing *Doe v. Kohn, Nast & Graf, P.C.,* 862 F.Supp. 1310, 1328 (E.D.Pa.1994)).

■ Here, Defendant Locke Property alleges that an agreement existed between Plaintiff Mill Run and Summit Management to harm Defendants, and asserts the existence of an underlying intentional tort (Count IV–fraudulent inducement). However, Locke Property specifically alleges that "Mill Run *and its agents* purposely combined and agreed" to harm Defendants, without further alleging that the agents were acting on their own behalf. *See* Counterclaim at ¶ 74. Because a corporation cannot conspire with itself or its agents under state law, Locke Property's civil conspiracy claim is deficient on its face. Therefore, Plaintiff's Motion to Dismiss Count X of the Counterclaim is granted.

### J. Count XI of the Counterclaim: Failure of Essential Purpose

Plaintiff next seeks dismissal of Count XI of the Counterclaim, in which Defendant Locke Property alternatively alleges that Plaintiff's conduct resulted in the failure of the essential purpose of the con-

---

**5.** Specifically, Locke Property alleges that the "conduct and services" it performed while seeking the Permit for Lot 11 benefitted both Mill Run and prospective buyers by demonstrating that the lot was permittable. *See* Counterclaim at ¶¶ 69–71.

tract. Specifically, Plaintiff argues that no such claim exists under Pennsylvania law and, in any event, this is merely a restated claim for breach of contract.

It is not clear whether the doctrine of failure of essential purpose, or frustration of purpose, constitutes a valid cause of action under Pennsylvania law, or whether it is properly an affirmative defense. *See, e.g., Corestates Bank v. Signet Bank,* 1996 WL 482909, at \*11 (E.D.Pa. Aug.26, 1996) (dismissing frustration of purpose of claim, but not on general theory that Pennsylvania does not recognize such a claim). However, it is not necessary for the Court to make such a determination for purposes of the instant motion to dismiss. The doctrine of failure of essential purpose provides that the subject matter of a contract is an implied condition of the continuance and enforceability of the contract, and that the contract is dissolved when the subject matter no longer exists. *See* Restatement (Second) Contracts § 281 ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary"); *Aluminum Co. of America v. Essex Group,* 499 F.Supp. 53, 70 (D.C.Pa.1980).

■ Here, Defendant Locke Property avers that "there has been a failure of essential purpose of the Agreement because: Mill Run has committed a total and fundamental default under the Agreement ..." *See* Counterclaim at ¶ 80. Clearly, Defendant Locke Property's allegation is that Plaintiff Mill Run breached the Agreement. Because a claim for breach of contract has already been raised by Locke Property, Plaintiff's Motion to Dismiss Count XI of the Counterclaim is granted.[6]

### K. Count XII of the Counterclaim: Novation

Plaintiff next seeks dismissal of Count XII of the Counterclaim, in which Defendant Locke Property alternatively alleges novation of contract. Specifically, Plaintiff argues that no such claim exists under Pennsylvania law, and that any novation would violate the Statute of Frauds.

■ Once again, it is not necessary for the Court to determine whether, under Pennsylvania law, the doctrine of novation constitutes a cause of action or an affirmative defense. The doctrine of novation, or substituted contract, applies where: (1) a prior contract has been displaced; (2) a new valid contract has been substituted in its place; (3) there exists sufficient legal consideration for the new contract; and (4) the parties consented to the extinction of the old contract. *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 478 A.2d 484, 486 (1984). The party requesting the novation bears the burden of demonstrating that the parties had "a meeting of the minds." *Id.*

■ Here, Defendant Locke Property repeatedly avers that the parties had a meeting of the minds regarding a promise to obtain the Permit in exchange for the sale of Lot 11. However, as Locke Property concedes elsewhere in its present motion, it is not seeking to substitute a new contract for the original Agreement, as required for novation, but rather enforcement of the original Agreement based on alleged subsequent oral agreement(s) (and/or course of conduct). *See* Br. Opposing Pl.'s Motion to Dismiss at 9–10.

---

**6.** In any event, the Court will treat failure of essential purpose as an affirmative defense pursuant to Rule 8(c).

Therefore, to the extent that Count XII constitutes a valid cause of action, the count is dismissed.[7]

## L. Count XIII of the Counterclaim: Declaratory Judgment

Finally, Plaintiff seeks dismissal of Count XIII of the Counterclaim, in which Defendant Locke Property seeks a declaratory judgment from this Court as to rights and liabilities under the Agreement, as well as reimbursement of costs and expenses in reliance on Mill Run's alleged promise to reinstate the Agreement once the Permit was obtained. Plaintiff argues that this claim should be dismissed because Locke Property has failed to set forth any valid cause of action. Because I have found that some counts of the Counterclaim survive Plaintiff's Cross–Motion to Dismiss, dismissal of Count XIII is not appropriate at this stage of litigation. Therefore, Plaintiff's motion to dismiss Count XIII of the Counterclaim is denied.

## V. Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is denied. In addition, Plaintiff's Motion to Dismiss Defendant Locke Property's Counterclaim is granted in part, and denied in part. An appropriate Order follows.

7. In any event, the Court will treat novation as an affirmative defense pursuant to Rule 8(c).