Douglas **FAULKNER,** et al., Plaintiffs,

v.

**NATIONAL GEOGRAPHIC SOCIETY,** et al., Defendants.

David Hiser, et al., Plaintiffs,

v.

National Geographic Society, et al., Defendants.

Nos. 97 CIV. 9361(LAK), 99 CIV. 12488(LAK).

United States District Court, S.D. New York.

Dec. 23, 2003.

Stephen A. Weingrad, Weingrad & Weingrad, LLP, New York City, for Plaintiff Douglas Faulkner in No. 97 Civ. 9361 and for Plaintiffs in No. 99 Civ. 12488.

Robert G. Sugarman, Weil, Gotshal & Manges LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Faulkner in No. 97 Civ. 9361 and plaintiffs in No. 99 Civ. 12488 move for reconsideration of this Court's decision of

December 11, 2003, on the ground that the Court erred as a matter of law and should have recused itself. The motion is denied.

■ Little need be said about the claim of legal error. Reconsideration would be warranted only if the Court had overlooked controlling or persuasive authority or misapprehended the facts. Movants' memorandum suggests neither. Movants simply disagree with the decision. That is a basis for appeal but not for reconsideration.

The application for recusal is based on a *pot pourri* of assertions which do not warrant relief, either individually or collectively.

*Section 455(b)(2) Association in Practice With Alleged Former Attorney for Party*

■ In the course of preparing the decision in this case, the Court learned from papers before it that the late Judge A. Leon Higginbotham, who joined the law firm of which the undersigned was a member during the first quarter of 1993, was a trustee of defendant National Geographic Society prior to his death. The undersigned retired from the firm to take the bench in August 1994. Although the Court did not regard this as disqualifying, particularly in light of the fact that the record makes crystal clear that the project that culminated in *The Complete National Geographic,* the product here at issue, had its genesis in 1996, well after the undersigned left the law firm, it nevertheless so advised counsel by letter dated November 24, 2003. Movants did not then move to

disqualify the undersigned or make any objection, but awaited the decision, which was dated December 11, 2003. Only after losing have they raised the issue.

Litigants cannot be permitted to sit silently on recusal grounds and then to advance them only after they have lost the case.[1] Movants' failure to raise the issue in a timely fashion waived any objection, even disregarding the fact that they have known of Judge Higginbotham's board service at least since they served their requests for admissions many months ago.[2]

■ Even if the merits were properly before the Court, this aspect of the application would be without merit. Section 455(b)(2) of the Judicial Code, as amended,[3] "requires recusal if, and only if, (1) the judge, while in private practice, or another lawyer in the same firm, (2) during the judge's tenure with the firm, (3) 'served ... as a lawyer concerning the matter ....' "[4] The information before the Court is that Judge Higginbotham served as a trustee of the NGS. There is no suggestion that he served as a lawyer for the NGS while he and the undersigned were associated in practice. In any case, regardless of whether he acted as a trustee or a lawyer, he could not have acted "concerning the matter" during the period while both he and the undersigned were at the law firm because the undersigned left the firm in August 1994, well before the 1996 genesis of *The Complete National Geographic.*

1. *See, e.g., Universal City Studios, Inc. v. Reimerdes,* 104 F.Supp.2d 334, 349–50, 352–53 (S.D.N.Y.2000) (collecting cases), *stay denied,* (July 19, 2000), *mandamus denied,* (Aug. 17, 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley,* 273 F.3d 429 (2d Cir. 2001).

2. *See* Weingrad Decl., Dec. 22, 2003, ¶ 3 & Ex. C.

They are charged also with knowledge of the undersigned's membership in and Judge Higginbotham's association with the law firm, both of which were matters of public record. *See, e.g., Universal City Studios, Inc.,* 104 F.Supp.2d at 349 & n. 88 (collecting cases).

3. 28 U.S.C. § 455(b)(2).

4. *Universal City Studios, Inc.,* 104 F.Supp.2d at 353.

*Section 455(b)(2) Association With Alleged Material Witness*

Movants next suggest that disqualification was required because Judge Higginbotham is or was "a material witness with respect to the development of the CNG." [5]

Section 455(b)(2) does require recusal where "the judge or such lawyer has been a material witness concerning" the matter. It is not entirely clear whether the statute is triggered only where the lawyer with whom the judge practiced was a material witness during the period in which the judge and the lawyer were associated in practice, in which case it clearly could not apply here because "the matter" originated well after the judge left the law firm, or applies whenever a former law firm associate is a material witness. But that point is academic here.

As *The Complete National Geographic* project began in 1996, two years after the undersigned left the firm, any contact Judge Higginbotham had with the issues presented here post-dated the professional association. Hence, there is no colorable argument that any knowledge Judge Higginbotham might have gained should be imputed to the undersigned by reason of the professional relationship. As far as the Court is aware, no affidavit, declaration, or deposition testimony given by him is part of the record in this case. Certainly he never testified before the undersigned. Moreover, Judge Higginbotham died in December 1998. In consequence, he neither is nor was a witness in any relevant sense. The fact that he may have been present on occasions when *The Complete National Geographic* was discussed in the 1996–98 period, after the undersigned had left the law firm, is entirely immaterial to the propriety of the undersigned sitting.

*Section 455(b)(2) Former Representation of Party*

Movants next rely upon the fact that the undersigned, while a practicing lawyer, represented Sterling Drug, Inc., then a subsidiary of Eastman Kodak Co., a defendant in this case, in a trademark litigation against Bayer AG [6] prior to taking the bench.

The Court assumes for the sake of argument that representation of Sterling Drug was equivalent to representation of Eastman Kodak. Even given that assumption, however, movants' argument is baseless. Under Section 455(b)(2), a judge is disqualified from hearing a case involving a former client only in the circumstances referred to in the prior section. Quite obviously, the representation of Sterling Drug in a trademark litigation concerning the right to use the name "Bayer" in the United States cannot credibly be said to have concerned the same "matter" that is at issue here.

*Section 455(a) Alleged Bias Against Counsel*

Movants next assert that the undersigned is hostile to and biased against their attorney, Stephen Weingrad, Esq. The Court regards the assertion as unwarranted, but that is neither here nor there for two reasons.

First, movants' claim of hostility and bias rests exclusively on events that occurred before the summary judgment decision was rendered.[7] Indeed, the only specific complaint is the denial of the motion for class certification in No. 99 Civ. 12488, which occurred on May 17, 2000,

---

**5.** Pl. Mem. 13.

**6.** *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733 (2d Cir.1994).

**7.** *See* Pl. Mem. 15.

more than three and a half years ago. The failure to seek recusal in the interim waived the point.[8]

■ Even if the complaint were timely, it would be completely without merit. The evident basis for counsel's grievance is the ruling denying class certification, which the Court did not publish in order to spare counsel. As counsel now relies on that ruling in support of the present motion, however, it is well to quote it in full:

"This is an action for copyright infringement by a number of photographers and writers whose work has been published in *National Geographic Magazine*. The essence of their claim is that they granted the magazine limited rights to publish their works and that the defendants have infringed their copyrights by republishing their work beyond the rights granted to them, chiefly in electronic media. Plaintiffs seek to maintain the case as a class action on behalf of all authors whose works have been published in the magazine over the past 110 years and who meet certain other criteria. The matter is now before the Court on plaintiffs' motion to certify a class.

"Rule 23(a) establishes four prerequisites to class certification. The class must be so numerous that joinder of all members is impracticable. There must be questions of law or fact common to the class. The claims or defenses of the class representatives must be typical of the claims or defenses of the class. And the representative parties must fairly and adequately protect the interests of the class. *E.g., In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y.2000). The burden of establishing that these prerequisites are satisfied lies with the putative class representatives. 7A Wright, Miller & Kane,

*Federal Practice and Procedure: Civil 2d* § 1759, at 102 (1986).

"'The adequacy of representation requirement focuses on whether the plaintiffs have interests antagonistic to those of other class members and whether plaintiffs *and their counsel* are capable of competently and vigorously prosecuting the litigation.' *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164. Indeed, the attorney's qualifications are central to the question whether a class properly may be certified. *E.g., Cullen v. New York State Civil Service Comm'n*, 566 F.2d 846, 848–49 (2d Cir. 1977) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968)).

"The attorney of record for the plaintiffs and the proposed class in this case is Stephen A. Weingrad of the firm of Weingrad & Weingrad, L.L.P. Mr. Weingrad is not a stranger to this Court. He represented the plaintiffs in another copyright case recently, *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F.Supp.2d 191 (S.D.N.Y.1999). His professional performance in that action was unsatisfactory. Indeed, in passing on his motion to for reargument and reconsideration after the Court granted summary judgment dismissing his client's claims, the Court wrote as follows:

"'At the outset, it is worth noting that the post-judgment flurry was occasioned chiefly by the fact that the plaintiff [represented by Mr. Weingrad] failed competently to address most of the issues raised by this interesting case prior to the entry of final judgment. In particular, while plaintiff urged the application of U.K. law, it made no serious effort to address the choice of law issue and no effort at all (apart from citing the British copyright act) to bring pertinent U.K. au-

---

**8.** *E.g., Universal City Studios, Inc.*, 104 F.Supp.2d at 349–50, 356.

thority to the Court's attention before plaintiff lost the case. Indeed, it did not even cite *Graves' Case,* the supposedly controlling authority that the Court is said to have overlooked.' *Id.* at 192.

"Regrettably, Mr. Weingrad's performance in *Bridgeman* was not an isolated occurrence. In *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110 (2d Cir.1999), the Second Circuit rejected an appeal, taken by Mr. Weingrad from a district court judgment of dismissal, 'on the ground that the main Brief filed by appellant [*i.e.,* Mr. Weingrad] articulates no grounds for reversal of the judgment, and we decline to entertain arguments made for the first time in the Reply Brief.' *Id.* at 111. Moreover, the Circuit ordered Mr. Weingrad to pay the appellee's attorney's fees as a sanction pursuant to Fed. R.App. P. 38:

> " 'We do hold that appellee should recover under Rule 38 its reasonable attorney's fees in connection with this appeal. By failing in its main Brief to state reasoned arguments based on cited authority setting out grounds for reversal, appellant's counsel forced appellee to anticipate, research, and argue the issues in the case without knowing what issues appellant intended to raise. [citation omitted] An award of attorney's fees is thus appropriate as a sanction. Because the frivolous nature of the Brief is due to counsel, he should bear sole liability for these fees.' *Id.* at 112–13.

"Given both this Court's experience with Mr. Weingrad in *Bridgeman* and the Court of Appeals' determinations in *Ernst Haas Studio,* this Court quite confidently holds that no class represented by Mr. Weingrad meets Rule 23(a)'s requirement of adequate representation.

"Following the filing of plaintiffs' class certification motion, Mr. Weingrad wrote the Court and enclosed the *curriculum vitae* of his partner, Mr. Simmon. He added that he 'will be proposing [Mr. Simmon] as lead counsel should the Court grant [the] Motion for Class Certification' and indicated that he would file an affidavit by Mr. Simmon in that event.

"It is plaintiffs' burden to establish that the adequacy of representation requirement is satisfied. Mr. Simmon's *cv* shows that he has had substantial experience in aviation disaster, products liability and medical malpractice cases. There is no evidence that he has had any class action or copyright experience. Indeed, given that Mr. Weingrad's letterhead shows that Mr. Simmon is the junior partner in a three partner firm headed by Mr. Weingrad, it seems quite likely that he would be taking his lead from Mr. Weingrad.

"It is exceptionally unpleasant to speak so critically of anyone, let alone a member of the Bar. The Court sought to avoid the need for doing so by making its views known to Mr. Weingrad informally during a status conference. Mr. Weingrad nevertheless made this motion, which gave the Court no choice but to state its view on the record.

"The motion for class certification is denied in all respects." [9]

The Court understands that counsel is disappointed with the ruling on the motion for summary judgment. But movants allege no basis for supposing that the Court is biased against counsel, much less that it is so biased against counsel as to warrant disqualification pursuant to 28 U.S.C.

---

9. Order, No. 99 Civ. 12488(LAK) (May 17, 2000).

§ 455(a). Nothing movants have said even arguably suggests that the Court has "such virulent personal bias or prejudice against the attorney as to amount to a bias against the party."[10]

*Section 455(a) Combination of Circumstances*

 Movants perhaps suggest that even though none of the circumstances relied upon, considered alone, requires recusal under Section 455, recusal nonetheless is necessary either because they came "close" to meeting the requirements of a provision of Section 455(b) or because the circumstances in the aggregate give ground for disqualification under Section 455(a). Even if these suggestions had not been waived by movants' failure to raise them in a timely fashion, they would lack merit.

The Supreme Court rejected the first suggestion in *Liteky v. United States*,[11] where it made clear that it would be "unreasonable to interpret. § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)." (Emphasis in original)

And the second is equally baseless. The facts that the undersigned years ago represented a subsidiary of Kodak, a minor defendant here, in a completely unrelated matter; that a former law firm colleague was a member of the board of the National Geographic Society while he and the undersigned were at the firm, years before the earliest stirrings of the events that gave rise to this action; and that the Court has found Mr. Weingrad's professional performance wanting add up to no more in combination than they do individually. No one, knowing all of the facts, reasonably could question the impartiality of the undersigned.

*Conclusion*

For the foregoing reasons, the motion is denied in all respects.

SO ORDERED.

---

**10.** *United States v. Jacobs*, 855 F.2d 652, 656 n. 2 (9th Cir.1988). *See also Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir. 1983) (same); *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1050–51 (5th Cir. 1975), *cert. denied*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *United States v. Oluwafemi*, 883 F.Supp. 885, 891 (S.D.N.Y.1995) (same); *United States v. Ahmed*, 788 F.Supp. 196, 203 (S.D.N.Y.) ("[t]he hostility or bias must be so virulent and of such magnitude that it prejudices the judge against the attorney's client"), *aff'd*, 980 F.2d 161 (2d Cir. 1992).

**11.** 510 U.S. 540, 552–53, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).