**John H. ELLIOT, Plaintiff,**

v.

**James L. NELSON, Orbit Capital Corporation, and Orbitex Management, Inc., Defendants.**

**No. 03 Civ. 5653(VM).**

United States District Court, S.D. New York.

Jan. 29, 2004.

Jeffrey J. Mirman, Farmington, CT, for Plaintiff.

Daniel L. Schwartz, Day, Berry & Howard, L.L.P., Stamford, CT, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff John Elliot ("Elliot") alleges that defendant James Nelson ("Nelson"), a director of defendant Orbit Capital Corporation ("Orbit"), lured him into accepting an executive position at Orbit with the false assurance that Orbit was close to

raising a $40 million venture capital fund. Orbit never raised the funds and ultimately fired Elliot, who now seeks to recover damages against Nelson, Orbit, and Orbitex Management, Inc., ("Orbitex," and collectively, "Defendants") under the theories of negligent misrepresentation and promissory estoppel. Defendants move for summary judgment. The motion is granted.

## I. *BACKGROUND* [1]

Orbit was a venture capital firm that invested in Internet start-up companies. Beginning in February 1999, Paul Stefunek ("Stefunek"), an executive recruiter, began discussing with Elliot the possibility of placing him in an executive position with Orbit. Stefunek gave Elliot a "position profile" for the position of General Partner. That document stated that Orbit was affiliated with "the Orbitex Group of Companies," which had "over $1.2 billion under management." Elliot 56.1 Ex. B. It also stated that Orbit had "potential to access over $400 million in venture funding." *Id.* Stefunek, relying on Nelson's representations to him, told Elliot that Orbit was close to raising a $40 million venture capital fund.

Elliot and Nelson met on June 9, 1999, and Nelson reassured Elliot that Orbit was close to raising the $40 million. Nelson also highlighted the intimate relationship between Orbit and Orbitex (which apparently had access to vast capital), leading Elliot to believe that there would be no problem raising the money. On June 29, Nelson faxed Elliot an employment agreement, under which Orbit would have paid Elliot an annual salary of $200,000. Orbit rescinded the offer the next day, however, because Orbitex officials did not want Orbit to fill the position until the venture

capital fund was raised. Elliot met with Nelson again on July 2, 1999, to see about reviving the possibility of his employment. Nelson again assured Elliot that there would be no problem raising the money. Elliot agreed to accept a reduced salary of $100,000, which would be elevated to the original $200,000 when the venture capital fund was raised. By entering the employment agreement with Orbit, Elliot passed up at least one other firm offer of employment with another internet company.

Elliot's employment contract permitted either Elliot or Orbit to terminate the agreement, with 30 days' notice, if the venture capital fund was not raised within five months of the contract date. Under those circumstances, the contract obligated Orbit to pay Elliot 60 days' salary and benefits. Five months later, Orbit had not raised the fund and exercised its option to terminate its employment agreement with Elliot.

Elliot brought this lawsuit in Connecticut state court, seeking damages against Defendants on the basis of negligent misrepresentation and promissory estoppel. Defendants removed the case to federal court on the basis of diversity jurisdiction, and the District Court in Connecticut transferred the case to this district. Defendants now move this Court for summary judgment on all claims.

## II. *STANDARD FOR A SUMMARY JUDGMENT MOTION*

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

---

1. The factual summary derives from (1) the complaint; (2) Elliot's Local Rule 56.1 statement ("Elliot 56.1"); and (3) Defendants' Local Rule 56.1 statement, as well as the affida-

vits and exhibits attached to those documents. Except where necessary, the Court will not cite these sources further.

ty is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine." *Id.* at 249, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667 (2d Cir.1996).

### III. *DISCUSSION*

■ "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir.2000). Elliot's negligent misrepresentation claim fails as a matter of law because, first, Defendants' alleged representations were not false when made, and, second, Elliot's

alleged reliance on those representations was unreasonable.

■ Although "[p]romises of future conduct are not actionable as negligent misrepresentations," *Murray v. Xerox Corp.,* 811 F.2d 118, 123 (2d Cir.1987) (applying New York law), a promise "made with a preconceived and undisclosed intention of not performing it ... constitutes a misrepresentation of 'a material existing fact.'" *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906, 908 (1957) (citation omitted). Here, Elliot casts Defendants' assurances that Orbit would raise the venture capital fund as assertions that Defendants *intended* to try to raise the money. These assurances were false, according to Elliot, because Defendants actually made no efforts to raise the fund, thereby indicating that Defendants never intended to raise any money at the time they were pursuing Elliot. Elliot highlights the fact that Orbit did not actually raise *any* money towards the venture capital fund, nor did Orbit actually create the legal entity which would have held the money.

The Court disagrees with Elliot's argument because the uncontradicted record evidence demonstrates that Defendants did take steps, although ultimately unfruitful, towards raising money. For instance, Orbit prepared a detailed private placement memorandum under consultation with an elite Manhattan law firm, and Nelson distributed that memorandum to many potential investors. Nelson also hired several employees whom he thought would have good contacts with potential investors. In light of this evidence, no reasonable juror would conclude that Orbit had lured Elliot into the elaborate and expensive ruse of pretending to raise capital while intending not to do so, for no apparent purpose.

■ Elliot is correct that alleged representations that Orbit was "close" to raising the money would be actionable in the ordinary case. That representation would suggests that Orbit had raised at least some funds towards the $40 million goal. However, this allegation directly contradicts Elliot's deposition testimony from eight months earlier:

Q: And did Mr. Nelson make any representations to you on July 2, 1999 as to what the current status was of the efforts to raise the Venture Capital Fund?

A: Not that I recall.

Q: Did you have any reason to believe that as of July 2, 1999 any money had been raised for the Venture Capital Fund?

A: I had no idea how much money was raised at that time for the Venture Capital Fund.

Q: So it's fair to say that you didn't know if any money had been raised as of July 2, 1999.

A: Yes.

See Reply in Support of Defendants' Motion for Summary Judgment, Ex. A at 174–75. Elliot has not identified anywhere in his *deposition* where any Defendant told him that Orbit was "close" to raising the venture capital fund, or otherwise indicated to him any particular amount of money which had actually been raised. A "party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir.1996); *see also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

■ Alternatively, the Court concludes that any alleged reliance upon the Defendants' statements would be unreasonable as a matter of law. Elliot certainly should not have relied on assurances that Orbit would raise the full amount of the venture capital fund because his employment contract specifically contemplated the possibility that it would not. Where there is a "meaningful" conflict between a written contract and prior oral representations, a party will not be deemed to have justifiably relied on the prior oral representations. *Bango v. Naughton*, 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (3d Dep't 1992) ("[T]he conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter."). To the extent that Elliot claims to have justifiably relied on the implicit assertion that Defendants *intended* to raise money, the Court, for the same reasons discussed above, concludes that the uncontradicted evidence demonstrates that Defendants *did* intend to raise the money.

■ It follows that Elliot's claim for relief under a theory of promissory estoppel must fail, as well. Reasonable reliance is "a necessary element of promissory estoppel," *Tri–Land Properties, Inc. v. 115 West 28th Street Corp.*, 238 A.D.2d 206, 656 N.Y.S.2d 863, 864 (1st Dep't 1997), and, for the reasons discussed, Elliot's alleged reliance was unreasonable as a matter of law.

## IV. *ORDER*

For the reasons stated, it is hereby

**ORDERED** that the motion of defendants James Nelson, Orbit Capital Corporation, and Orbitex Management, Inc. (col-

lectively, "Defendants") for summary judgment is granted and the case is dismissed with prejudice. The Clerk of Court is directed to enter judgment on Defendants' behalf.

The Clerk of Court is directed to close this case.

**SO ORDERED.**