**Elliot ROSOFF, Plaintiff,**

**v.**

**MOUNTAIN LAUREL CENTER FOR THE PERFORMING ARTS, et ano., Defendants.**

**No. 02 Civ.8352(LAK).**

United States District Court, S.D. New York.

May 13, 2004.

Jason L. Solotaroff, Giskan & Solotaroff, New York City, for Plaintiff.

Diane Windholz, Marissa L. Coyne, Jackson Lewis LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a concert violinist and world music figure, hoped to foster development of a summer performing arts center in the Poconos Mountains of Pennsylvania. As the project began to take shape, he envisioned himself as artistic director with substantial compensation. Various discussions took place with others involved in the project. Plaintiff ultimately brought this action to recover compensation that, he claims, is owed by the center, now known as Mountain Laurel Center for the Performing Arts (the "Center"), and its chairman, Harry Kiesendahl. Defendants move for summary judgment dismissing the amended complaint (the "Complaint").

*Facts*

The Center's origin may be traced to 1997, when plaintiff and others formed a predecessor known as The Keystone Center for the Performing Arts ("Keystone"), apparently in the hope of attracting orchestras and symphonies to the area during summers.[1] For reasons that are neither explained nor material, Keystone somehow gave way to the Center, which was incorporated in February 2000.[2] The events critical to this case began at about that time.

On February 3, 2000, the board of directors of the future Center adopted a resolution appointing plaintiff artistic director.[3] At that time, plaintiff distributed a document listing what he believed would be the duties of the artistic director.[4] Nevertheless, plaintiff agrees that there was no discussion at that meeting of whether plaintiff would receive any compensation or benefits, how long he would serve, or the circumstances in which he might be terminated.[5]

In August 2000, plaintiff submitted to the Center a document characterized in the Rule 56.1 statements as a "proposed employment contract," but which in fact is merely a term sheet proposing a salary of $150,000 per annum, a duration of five years, certain benefits, and a number of other terms.[6] The document specified that plaintiff's duties were to be "non-exclusive" and that he would "devote such time [to the Center] as [might be] necessary to complete duties." While it referred to an

---

[1] Sader Aff. ¶¶ 4, 7.

[2] *Id.* ¶ 8.

[3] Def. 56.1 St. ¶ 28.
In this and most other cases in which the Court cites the defendants' Rule 56.1 statement, the relevant paragraphs herein are admitted by plaintiff in their entirety. In a few instances, so much of the relevant paragraph as is referred to is admitted either explicitly or by failure to deny.

[4] *Id.* ¶ 29.

[5] *Id.* ¶ 31.

[6] *Id.* ¶ 36; DX U.

attached description of duties, no attachment has been produced on this motion.[7]

On November 16, 2000, the Center's management committee decided that the artistic director would be selected by a yet-to-be hired chief executive officer ("CEO") and that it would not then offer plaintiff a contract, although it would support plaintiff's candidacy if the CEO ultimately decided that an artistic director should be appointed.[8] The committee nonetheless awarded plaintiff a $100,000 honorarium to be paid 90 days after the Center received certain approval from the Commonwealth of Pennsylvania and anticipated bank financing based upon it.[9] On the following day, Kiesendahl wrote to plaintiff, summarizing these decisions.[10]

Plaintiff, after speaking with Kiesendahl,[11] responded with a memorandum dated December 1, 2000 headed "Suggested revision to your letter." The suggested revisions in the key passage are indicated here with additions underlined and deletions struck out:

> "To summarize our conversation *at the meeting,* all agreed that your vision, pioneering spirit and hard work kept this project alive. We also felt that a decision on ~~a~~ *the financial details of your* contract *as Artistic Director* ~~before hiring the CEO~~ would be inappropriate and not be in the best interests of the Center ~~or yourself,~~ nor would it make good

business sense. Once a CEO is appointed, the Management Committee will ~~strongly support your proposal for the position of Artistic Director~~ *seek input on those financial terms from the CEO and make a final decision. The final decision as to those terms will, however, remain with the Board.*"[12]

On December 5, 2000, Kiesendahl sent plaintiff "a revised letter, per [plaintiff's] input" and asked that he sign and return a copy. Plaintiff did so[13] and resumed work with the Center. The signed letter incorporated all of plaintiff's proposed changes.

In mid-2001, plaintiff bought a house in the Poconos near the proposed site of the Center. At his request, the Center's project manager sent a letter to plaintiff's mortgage broker that stated that plaintiff "will be brought onto the project in a salary capacity at the beginning of December 2001 and will continue in that capacity well past our grand opening Memorial Day Weekend 2003."[14]

In the winter of 2001, plaintiff submitted for the Center's consideration a second term sheet, this one calling for a salary of $135,000, an unspecified "incentive program," a duration of six years and benefits among other things.[15] This proposal was not accepted.[16]

The Center finally obtained financing in early 2002 and hired a CEO who decided

---

7. DX U; Solotaroff Aff. Ex. 23.

8. Def. 56.1 St. ¶¶ 41–42.

9. *Id.* ¶ 43.

10. *Id.* ¶ 45; DX X.

11. *See* Solotaroff Aff. Ex. 1 (Rosoff Dep.) 150.

12. *Compare* DX Y (plaintiff's revision) *with* DX X (Kiesendahl letter).

13. Def. 56.1 St. ¶ 48; DX Z.
 Defendants claim that Kiesendahl did not realize that plaintiff had altered the substance of his account of the management committee determination and thus sent the December 5, 2000 letter and enclosure unwittingly. Plain-

tiff disputes this. Pl. 56.1 St. ¶ 48. The issue, however, is not material, as the Center is legally responsible for what Kiesendahl signed regardless of what was in his mind when he signed it. *E.g., Aini v. Sun Taiyang Co.,* 964 F.Supp. 762, 776 (S.D.N.Y.1997) (collecting cases).

14. Solotaroff Aff. Ex. 22.

15. Def. 56.1 St. ¶ 51; DX AA.

16. *Compare* Def. 56.1 St. ¶ 54 *with* Pl. 56.1 St. ¶ 54 (denying only that earlier term sheet was not accepted).

that it neither needed nor could afford a salaried artistic director.[17] It never hired plaintiff, who thereupon brought this action.[18]

The Complaint contains four claims for relief:

- Breach by the Center of an alleged oral agreement to offer him a contract to serve as its artistic director once it received funding.[19]
- Recovery against the Center in *quantum meruit* for services rendered by plaintiff.[20]
- Recovery against the Center on a theory of promissory estoppel based on an alleged promise of a salaried position as artistic director.[21]
- Negligent misrepresentation against both the Center and Kiesendahl based on an alleged statement that plaintiff "would receive a salaried position and employment contract as Artistic Director when the center received funding." [22]

## Discussion

### A. Breach of Contract

The contract claim in the Complaint is that the Center breached an alleged oral agreement to offer plaintiff an employment contract once it received funding.[23] Plain-

tiff, however, appears to have abandoned that theory. His memorandum now asserts that his August 2000 proposal for a five year, non-exclusive employment contract at $150,000 per year plus other benefits should be regarded as an offer and that the Center accepted that proposal by its letters of November 17 and December 5, 2000, or, at least, that a jury could so infer.[24] Regardless of whether New York or Pennsylvania law controls, however,[25] this contention is without merit.

The Court assumes that plaintiff's August 2000 communication was an offer to enter into a five year employment contract on the terms there stated. Taking plaintiff's revision of the November 17, 2000 letter that Kiesendahl signed on December 5, 2000 as an acceptance, the parties agreed on no more than the propositions that (1) plaintiff would be the artistic director for five years, (2) resolution of the financial terms would await appointment of a CEO, (3) the final decision on those terms would be that of the board, (4) plaintiff's employment would be non-exclusive, and (5) plaintiff would not be obliged to devote more time to the Center than his duties required.

■ It often is said that the failure to agree on all essential terms precludes the formation of a contract.[26] As Judge Leval

---

**17.** Def. 56.1 St. ¶ 58; Kiesendahl Dep. II at 100–01.

**18.** Indeed, it is undisputed that it never paid the $100,000 honorarium. Plaintiff, however, does not seek to recover the honorarium in this action.

**19.** Cpt. ¶¶ 37–42.

**20.** *Id.* ¶¶ 43–45.

**21.** *Id.* ¶¶ 46–48.

**22.** *Id.* ¶ 51.

**23.** *Id.* ¶ 38.

**24.** Pl. Mem. 22.

Plaintiff does assert in a footnote relating to a statute of frauds contention by the defendants that "[t]he contract at issue is not the employment agreement *itself* but *rather* the agreement to provide [him] with an employment contract once the project received funding and a CEO was hired." *Id.* 26 n. 1. But this is inconsistent with the argument made in the text of the memorandum.

**25.** The parties disagree on this point.

**26.** *E.g., Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher,* 52 N.Y.2d 105, 109–10, 436 N.Y.S.2d 247, 249, 417 N.E.2d 541 (1981).

pointed out in *Teachers Ins. & Annuity Ass'n v. Tribune Co.,*[27] this statement perhaps is overly broad, at least as respects New York. Where parties reach agreement on major terms, leaving others for further negotiation, *and* intend to be bound by the preliminary agreement, a contract is formed.[28] With respect to the open terms, the obligation is "to negotiate together in good faith in an effort to reach final agreement."[29] If the open terms cannot be resolved despite good faith negotiations, the parties' obligations are at an end.[30]

■ The question whether the parties here regarded the exchange of letters as creating a "binding preliminary agreement," to use Judge Leval's term, depends upon whether the parties intended to be bound in advance of resolution of the compensation and other open issues.[31] This requires consideration of factors including (1) the language of the agreement, (2) the context of the negotiations, (3) the existence of open terms, (4) partial performance, and (5) the necessity of putting the agreement in final form as indicated by the customary practice.[32] But that does not mean that summary judgment is never appropriate where such a question of intent is at issue. "There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents."[33] That presumption is sufficient to warrant the entry of summary judgment against the party asserting the alleged contract absent evidence sufficient to warrant a jury in finding an intent to be bound notwithstanding.[34]

■ Here, the conceded lack of any understanding as to compensation and benefits is powerful evidence that there was no intention to be bound. Responsible business people simply do not enter into five year employment contracts without reaching agreement concerning at least the core of the compensation arrangements. Further, the customary practice is to reduce such agreements to formal contract documents, which was not done here.

The context of the negotiations also supports the defendants. Plaintiff submitted his proposed contract in August 2000. He acknowledges that he then "became concerned when he did not have any definite response to his proposal" and told Kiesendahl that he not longer would assist with the project.[35] Kiesendahl's November 17 letter stated that the committee "felt that a decision on a contract before hiring the CEO would be inappropriate."[36] To be sure, Kiesendahl, on December 5, 2000 signed off on plaintiff's revision, which

**27.** 670 F.Supp. 491, 497–98 (S.D.N.Y.1987).

**28.** *Id.* at 498. It appears to be an accurate statement of Pennsylvania law. *See, e.g., Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 418–19, 305 A.2d 689, 693–94 (1973); *Johnston v. Johnston,* 346 Pa.Super. 427, 431, 499 A.2d 1074, 1076 (1985); *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa.Super. 40, 54–55, 445 A.2d 1288, 1295–96 (1982).

**29.** *Teachers Ins.,* 670 F.Supp. at 498.

**30.** *E.g., Adjustrite Sys., Inc. v. Gab Bus. Services, Inc.,* 145 F.3d 543, 548 (2d Cir.1998) (New York law).

**31.** *Id.* at 548–49.

**32.** *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989).

**33.** *Id.* at 73 (quoting *Tribune,* 670 F.Supp. at 499).

**34.** *E.g., Adjustrite Systems, Inc.,* 145 F.3d at 551 (affirming summary judgment dismissing claim); *Arcadian Phosphates, Inc.,* 884 F.2d at 73 (same).

**35.** Pl. Mem. 13.

**36.** DX X.

changed that language to read "felt that a decision on the financial details of your contract as Artistic Director would be inappropriate." But even assuming that Kiesendahl thereby accepted the premise that plaintiff wished him to accept – *viz.,* that there would be a contract – the circumstances and, indeed, the language (especially the reference to the final decision resting with the board) strongly suggest that there was no intention to be bound even to a preliminary agreement.

In an effort to overcome this evidence, plaintiff points to the Center's letter to his mortgage broker and relies upon various statements of his subjective belief and understanding. But the letter is neither here nor there, as it is undisputed that all concerned expected that plaintiff would be hired in a salaried position at the time the letter was written. The statements of belief or understanding are immaterial in view of the well established principle that the controlling intention is that which is discerned from the parties' objective manifestations of agreement, not subjective, uncommunicated intentions or beliefs.[37]

In sum, plaintiff has no substantial evidence supporting his contention that he and the Center intended to be bound by the exchange of correspondence upon which he relies. No trier of fact reasonably could conclude that the parties intended to be bound to a five year employment contract, in the absence of any agreement on compensation and related terms. Defendants are entitled to summary judgment dismissing the first claim for relief.

### B. Negligent Misrepresentation

 The fourth claim for relief seeks recovery on a theory of negligent misrepresentation for Kiesendahl's alleged statement that plaintiff "would receive a salaried position and employment contract as Artistic Director when the center received funding."[38]

" 'Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. However, the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.' ... As in the case of fraud, discussed above, '[n]o action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual.' "[39]

---

37. *E.g., Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997); *Faulkner v. Nat'l Geographic Soc'y,* 294 F.Supp.2d 523, 531 n. 30 (S.D.N.Y.), *reconsideration denied by* 296 F.Supp.2d 488 (S.D.N.Y.2003); *Bayer Corp. v. Chestnut Acq. Corp.,* 189 F.Supp.2d 153, 157 (S.D.N.Y.2002); *Hotchkiss v. Nat'l City Bank of New York,* 200 F. 287, 293 (S.D.N.Y.1911), *aff'd,* 201 F. 664 (2d Cir.1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913).

38. Cpt. ¶ 51.

Plaintiff does not rely on the statement in the Center's letter to the mortgage banker in June 2001 that he would "be brought onto the project in a salary capacity at the beginning of December 2001 and will continue in that capacity well past our grand opening Memorial Day Weekend 2003." His memorandum refers solely to an alleged statement by Kiesendahl. *See id.;* Pl. Mem. 34.

39. *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 20–21 (2d Cir.2000) (internal citations omitted).

Here, there is no allegation, let alone evidence, that Kiesendahl, when he made the statement plaintiff says he relied upon, knew or should have known that it was incorrect, i.e., that plaintiff would not receive an employment contract in the future or, at least, that the Center had no intention of giving him one. Accordingly, if New York law applies, the negligent misrepresentation claim must be dismissed.

Plaintiff stoutly contends that Pennsylvania law is to the contrary and that it should be applied here. The latter issue need not be resolved, however, as plaintiff cannot prevail on this claim even under the law of Pennsylvania.

■ The elements of negligent misrepresentation in Pennsylvania are "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." [40] The requirement of a misrepresentation of a material fact of course implies that there can be no claim based on a promise of future

actions unless the promissor does not intend to fulfill the promise, in which case there is a misrepresentation of the promissor's present intention.[41] And that indeed is the law of Pennsylvania.[42]

The same paucity of evidence that defeats the claim under New York law would be fatal even if Pennsylvania law applied. There simply is no assertion, and certainly no evidence, that Kiesendahl knew or believed at the time he made the alleged statement that the Center would not hire plaintiff.

*C. Promissory Estoppel*

■ Plaintiff's third claim for relief is that the Center in late 1999 promised that he would receive a salaried position as artistic director and that he justifiably relied on that promise until October 2001 in (1) buying a house near the proposed site, and (2) continuing to devote his efforts to the development of the Center to the exclusion of other performance and business opportunities.[43] His memorandum of law, however, does not rely on any alleged 1999 promise, but on the December 5, 2000 letter.[44]

---

**40.** *Bortz v. Noon*, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999) (citing cases).

**41.** *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258(SAS), 2004 WL 868211, at *9 (S.D.N.Y. April 21, 2004); *Elliot v. Nelson*, 301 F.Supp.2d 284, 287 (S.D.N.Y.2004); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994); *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987).

**42.** *See, e.g., Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 23, 396 A.2d 1172, 1175 (1977) (statement as to future plans or intentions does not constitute a misrepresentation under Pennsylvania law unless it misstates the speaker's true state of mind when made); *National Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir.2000) (same); *Jairett v. First Montauk Sec. Corp.*, 203 F.R.D. 181, 185 (E.D.Pa.2001) (same). Although these cases make the point in the context of fraudulent misrepresentation rather than neg-

ligent misrepresentation, the distinction for these purposes is of no consequence, as both claims require the plaintiff to show a misrepresentation of fact. *See Bortz*, 556 Pa. at 499–500, 729 A.2d at 560–62.

Plaintiff relies on *Lynady v. Cmty. Med. Ctr.*, 49 Pa. D. & C.4th 391, 2000 WL 33333935 (Pa.Com.Pl.2000), for the proposition that Pennsylvania permits negligent misrepresentation claims based on promises with respect to future conduct. But this *nisi prius* decision cites no authority for its assertion, *see* 49 Pa. D. & C.4th at 402, 2000 WL 33333935, which this Court regards as inconsistent with all other Pennsylvania authority and unlikely to be adopted by the Pennsylvania Supreme Court. It therefore declines to follow it.

**43.** Cpt. ¶¶ 46–47.

**44.** Pl. Mem. 33.

## 1. Fact of Damage

### a. The house in the Poconos

Insofar as plaintiff claims detrimental reliance by his purchase of a house in the Poconos, his claim must be dismissed. Among the elements of a promissory estoppel claim, whether under New York or Pennsylvania law, is injury in consequence of the detrimental reliance.[45] Here, defendants have placed in issue whether plaintiff can sustain his burden of making out a *prima facie* case that he was injured by the purchase of the house, even assuming that he otherwise prevails on his promissory estoppel claim.[46] Plaintiff, in order to avoid summary judgment on this issue, therefore was obliged to come forward with admissible evidence[47] sufficient to raise a genuine issue for trial.[48] He did not do so. Indeed, the only evidence is to the contrary.[49] Accordingly, defendants are entitled to summary judgment dismissing this aspect of the promissory estoppel claim.

### b. Lost business opportunities

The claim of lost business opportunities yields to the same analysis. Defendants have placed in issue plaintiff's ability to prove any such loss,[50] an issue on which plaintiff would have the burden of proof at trial. Thus, it was plaintiff's burden to come forward with admissible evidence sufficient to create an issue for trial with respect to injury.

Plaintiff has submitted an affidavit in which he states that, in consequence of his commitment to the Center, he made it known from 1996 until 2002 that he was not generally available for assignments and turned down most that were offered in that period, but that business has picked

---

**45.** *See, e.g., Arcadian Phosphates, Inc.,* 884 F.2d at 73 (2 Dep't 1989); *Murphy v. Burke,* 454 Pa. 391, 398, 311 A.2d 904, 908 (1973) (adopting RESTATEMENT (SECOND) OF CONTRACTS § 90 (Pennsylvania)).

It is debatable whether Pennsylvania permits recovery on a promissory estoppel claim of "benefit of the bargain" rather than simply out-of-pocket loss. *Compare Shallenberger Construction Inc. v. Rath Builders Supply Inc.,* 59 Pa. D. & C.4th 328, 333–34, 2002 WL 32068902 (Pa.Com.Pl.2002), *with Thompson v. Schriver,* 57 Pa. D. & C.4th 157, 162, 2002 WL 31661603 (Pa.Com.Pl.2002). This, however, is immaterial to so much of the claim as relates to alleged detrimental reliance by virtue of the purchase of the house.

**46.** Def. Mem. 30–31.

**47.** *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 123–24 (2d Cir.2001); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 746 (2d Cir.1998); *Raskin v. Wyatt Co.,* 125 F.3d 55, 65–66 (2d Cir.1997).

**48.** *E.g., Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (when nonmoving party bears burden of proof at trial, moving party is entitled to summary judgment if nonmovant fails to make showing on essential element of its claim); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *But see Davis v. City of New York,* 142 F.Supp.2d 461, 467 (S.D.N.Y.2001) (noting that the purpose of Rule 56 is "to isolate and dispose of factually unsupported claims or defenses" and holding that " '[f]actually unsupported' claims or defenses cannot include those for which factual support may exist, but is unavailable to the non-moving party simply because the movant is the only one with personal knowledge of the facts").

**49.** Plaintiff has continued to use the house since the cessation of his relationship with the Center, has no intention of renting or selling it, and admitted that it may have increased in value. Windholz Aff. Ex. D (Rosoff Dep.) 15, 190–92.

**50.** Def. Mem. 30–31.

up since he made his availability known in 2002.[51]

To the extent that plaintiff claims that he turned down assignments that actually were offered to him, his claim must fail. He testified at his deposition that he was unable to identify any opportunity of which he was unable to take advantage as a result of his reliance on the alleged promise.[52] An affidavit that contradicts the witness's deposition testimony is insufficient to raise a genuine issue of fact and thus insufficient to defeat a motion for summary judgment.[53] In consequence, plaintiff will not be heard to claim damages based on any foregone opportunities of which he was aware.

There remains the question whether plaintiff was injured not only by virtue of opportunities of which he learned, but by the loss of other opportunities of which he never learned that were not offered to him because those who might have employed him knew, directly or indirectly, of his statements that he was unavailable.

Plaintiff's affidavit to the effect that more opportunities have been offered to him since he let the music world know that he now is available than before is sufficient to raise a genuine issue of fact as to whether plaintiff was injured as a result of his reliance on the promise of a contract although, of course, it probably is insufficient to allow a jury reasonably to find more than nominal damages. But it is important to recognize that defendants placed in issue on this motion only plaintiff's ability to sustain his burden as to the fact of injury, not as to the amount.[54] Plaintiff therefore was not obliged to produce evidence as to the amount in order to defeat this aspect of the motion. In consequence, unless defendants are entitled to dismissal of this claim on a different ground, he is entitled to an opportunity to do so at trial.

### 2. Reasonable Reliance

▉ The elements of promissory estoppel are substantially the same under New York and Pennsylvania law.[55] The plaintiff must establish (1) a promise, (2) reasonable and foreseeable reliance on the promise, and (3) resulting injury.[56] The Court assumes without deciding that a trier of fact reasonably might conclude from the exchange of letters in November and December 2000 that the Center promised plaintiff an employment contract, albeit on financial terms left for future determination. The survival of the promissory estoppel claim therefore depends upon whether plaintiff has raised a genuine issue of fact as to reasonable reliance. And it is important in this regard to focus closely on both the alleged promise and the claimed reliance.

Plaintiff claims that he regarded the December 5, 2000 letter as a promise of an employment contract on the terms set out

---

**51.** Rosoff Aff. ¶¶ 3–4.

**52.** Windholz Aff. Ex. D (Rosoff Dep.) 117–19.

**53.** *E.g., Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

**54.** This distinction is well established in the antitrust field, *see, e.g., In re Visa Check/Mastermoney Antitrust Litig.,* 192 F.R.D. 68, 82 (E.D.N.Y.2000), *aff'd,* 280 F.3d 124 (2d Cir. 2001), *cert denied, Visa U.S.A. Inc. v. Wal-Mart Stores, Inc.,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002); *Continental*

*Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.,* 198 F.R.D. 41, 44–45 (E.D.N.Y.2000), and it is pertinent here by analogy.

**55.** The Court puts to one side the question whether New York applies the doctrine of promissory estoppel in the employment context.

**56.** *E.g., Rogers v. Town of Islip,* 230 A.D.2d 727, 646 N.Y.S.2d 158 (2d Dep't 1996) (requiring clear and unambiguous promise); *Murphy,* 454 Pa. at 398, 311 A.2d at 908.

in his August term sheet save that compensation remained to be determined. In reliance on that promise, he says, he "let it be known to various musical contractors who had previously engaged [him] that [he] was not generally available for assignments" that he otherwise would have accepted.[57] There are at least two major flaws in plaintiff's argument.

First, plaintiff's affidavit makes clear that he told the musical contractors of his limited availability "[f]rom 1996 until 2002."[58] Certainly he could not have relied upon the December 5, 2000 letter in doing so during the 1996 to 2000 period, which rather undermines the claim. Even more problematic, however, are the terms of the alleged promise.

Plaintiff's August 2000 term sheet went to considerable pains to ensure that he was proposing employment only on a non-exclusive basis and that he would be obliged to devote no more time to the job than was required by his duties. In other words, he offered himself as a salaried artistic director, but not to the exclusion of outside opportunities. When the Center, in his view, in December 2000 promised him a contract on the terms, save for compensation, that he had proposed, plaintiff necessarily understood that his anticipated employment by the Center would not prevent him from taking on outside engagements. If, as he now says, he relied on that promise to discourage outside engagements, his reliance was not reasonable because there was nothing in the promise that would have obliged him to turn down other work. Accordingly, plaintiff's promissory estoppel claim must be dismissed.

### D. Quantum Meruit

Plaintiff contends that he is entitled to recover the reasonable value of four years of his services to the Center on a *quantum meruit* basis.[59] Although he offered his services first at $150,000 and later at $135,000 plus unspecified incentive compensation, he contends that their reasonable value actually was $4 million.[60]

■■■ The good faith performance of services, accepted by another, in the reasonable expectation of compensation gives rise to a quasi-contractual claim for their reasonable value.[61] There is ample evidence from which a trier reasonably could find that plaintiff performed services for the Center, that he did so in good faith and that he expected eventually to be hired as a salaried employee. Defendants nevertheless seek dismissal on the ground that plaintiff was a volunteer who, given his knowledge of the Center's financial condition, could not reasonably have expected compensation for his services.

■■■ There is a genuine issue of material fact as to whether plaintiff's expectation of compensation, assuming he had one, was reasonable. Accordingly, this aspect of the motion must be denied.[62]

---

**57.** Rosoff Aff. ¶ 3.

**58.** *Id.*

**59.** Cpt. ¶¶ 43–45.

**60.** *Id.* ¶ 45.

**61.** *See, e.g., Mill Run Assocs. v. Locke Prop. Co.,* 282 F.Supp.2d 278, 292–93 (E.D.Pa. 2003) (Pennsylvania law); *King of Prussia Equip. Corp. v. Power Curbers, Inc.,* 158 F.Supp.2d 463, 467 (E.D.Pa.2001)· (same); *Kreiss v. McCown De Leeuw & Co.,* 131 F.Supp.2d 428, 437 (S.D.N.Y.2001) (New York law); *In re Alu,* 302 A.D.2d 520, 755 N.Y.S.2d 289, 290 (2d Dep't 2003) (same).

**62.** Other questions concerning the *quantum meruit* claim abound. For example, while there is evidence that plaintiff expected to become an employee at some seemingly ever-receding future date, it perhaps is arguable that he never expected to be paid for any services that he rendered because he knew as each service was performed that any compensation would begin only in some future period, after the Center entered into an employment contract, and relate only to some service

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing the Complaint is granted to the extent that the first, third and fourth claims for relief are dismissed. The motion is denied in all other respects.

SO ORDERED.

to be rendered in that future period. As the parties have not briefed this and other points, the Court declines to address them.